Argued June 16; affirmed September 15, 1931

# HOLMAN *v.* UGLOW

(3 P. (2d) 120)

*Oscar Hayter,* of Dallas, for appellant.

*W. C. Winslow,* of Salem (Charles Gregory, of Dallas, on the brief), for respondent.

ROSSMAN, J. The first assignment of error submits the question whether the circuit court erred when

it overruled the defendant's motion for a nonsuit which was based upon the contention (we quote from the motion) that "the evidence submitted on the part of the plaintiff shows contributory negligence on the part of plaintiff's decedent which would bar recovery." The answer alleged that the deceased was guilty of negligence in the following particulars:

"(a) In occupying a place of danger by walking behind said Voth automobile and pushing it along the pavement while it was in the right-hand lane of travel on said highway. * * *

"(b) In failing to keep a proper or any lookout for cars approaching from the rear.

"(c) In failing to step to the right or the left or otherwise placing himself out of danger upon the approach of defendant's automobile, although he could have easily done so.

"(d) In failing to exercise reasonable or ordinary care to avoid injury to himself from cars traveling upon said highway."

The proof introduced by the plaintiff indicated that December 12, 1929, at 10:30 p. m., while the deceased, Irvin Holman, and another young man, Elmer Hayes, were riding as guests in an automobile operated by their host, Albert Voth, upon the Dallas-Salem Highway at a point approximately one-half mile east of Dallas, the supply of gasoline became exhausted, the automobile stopped, and the three young men concluded, after a brief conference, that they would push the automobile to a place about 450 feet ahead where it could be parked upon a graveled area on the side of the roadway out of the range of traffic, and where Voth believed he could obtain some gasoline. The circumstances which persuaded them that it would be unwise to park at the place where the automobile had stopped were the following: The night was dark and

a heavy downpour of rain was falling, accompanied with a strong north wind; the hard-surfaced pavement was only sixteen feet wide with three-foot graveled shoulders; beyond the right shoulder was an area approximately six feet wide sloping towards a ditch two and one-half feet deep; the graveled shoulder and the six-foot strip were wide enough to accommodate their automobile, but they feared that, since the latter area was composed of rain-soaked clay, the wheels of the automobile would sink into the mud to such a depth that the car could not be moved when a new supply of gasoline was obtained, without the assistance of a towing car. These circumstances, together with the nearness of the graveled area 450 feet ahead, convinced the three young men that they should undertake to push their car (a Chrysler sedan) ahead to it. Thereupon, Voth took a position at the left rear corner of the car, Holman at the right rear corner, and Hayes took his position between the two. They first pushed the car to the extreme right-hand side of the roadway so that the two right wheels were at the outer edge of the graveled area, and then proceeded ahead. After they had progressed about fifteen feet and had noticed that the car was continually swerving towards the soft muddy area beyond the graveled shoulder, Voth concluded to resume his position behind the steering wheel so that he could steer the car along the desired course. He changed his position while the car was in motion, and testified that he thereafter kept the right wheels upon the outer edge of the graveled shoulder. After they had moved ahead several feet more the defendant's car (a Marmon), which was traveling in the same direction, collided with it from the rear, inflicting upon Holman and Hayes such severe injuries that both died a few days thereafter.

Voth swore that the tail-light upon his car was burning during all of the above period. All other witnesses for the plaintiff, being persons who came to the scene of the accident shortly following the collision, testified that they observed the tail-light illuminated when they arrived. That light, which was described by one of the witnesses as a bright one, was over the lower extremity of the left rear fender. Voth testified that he observed no change in the position of his two companions after he stepped from the rear of the car to the driver's seat. Following the collision, Holman lay near the right-hand edge of the pavement, while Hayes was picked up near the middle of the roadway. The rear of the Chrysler car was guarded with two bumperetts, one on either side of the spare tire. Both of these were bent out of place by the impact and the spare tire was struck with sufficient force to shove it forward and dent the gasoline tank. The front of the Marmon also showed the effects of the collision. Its left fender, especially the inner portion of it, was badly bent. The front of the right fender was also crumpled. The left headlight was turned to the left at an angle of 90 degrees, while the right headlight was forced out of position sufficiently so that its rays were directed upward. The connecting rod between the two headlights was bent backwards noticeably, apparently by coming into contact with something near its central part. The bumper which protected the front of the defendant's car was bent inward and the radiator was forced backwards so that when the motor was started the fan scraped the inside portion of the radiator.

The highway where this collision occurred is virtually level and is straight for such a distance that an automobile can be observed in operation upon it for a

distance of 1,482 feet by an individual standing at the
scene of the accident. The collision occurred approxi-
mately 400 feet east of the westerly end of the area
just mentioned. Hence, the defendant before coming
into contact with the Chrysler traveled about 1,000
feet along the straight-of-way. There were no ob-
structions of any kind upon it except a car traveling
in the direction opposite to that of the defendant which
he met about 300 feet, or, according to Voth, "a very
short time" before colliding with the Chrysler. Its
driver testified that he dimmed his lights as he ap-
proached the defendant.

The headlights upon the defendant car were illu-
minated but were switched to dim a few moments be-
fore the impact occurred. Uglow did not sound his
horn or give to the young men any other warning as
he approached the Chrysler. Of the plaintiff's wit-
nesses only Voth saw the oncoming Marmon. His rear-
view mirror first informed him of its presence upon
the roadway, and later as the Marmon came nearer its
headlights illuminated the interior of the Chrysler.
Voth, however, did not estimate the Marmon's speed,
but testified that the force of the impact threw his car
thirty feet ahead before he was able to bring it to a
stop. It also flung him to the top of the car, breaking,
in that action, a metal bar which held in position the
back of his seat. According to the plaintiff's witnesses,
the rear of the Marmon was in the ditch to the right of
the roadway when it came to a stop, with its front pro-
jecting into the roadway. Plaintiff's counsel argues
that its approach was so rapid that it rebounded into
that position.

It will be observed from the foregoing that there
was an area to the right of the Chrysler which would

have been available to the defendant in the emergency as a means of avoiding striking the Chrysler. To the left was twelve or thirteen feet of hard-surfaced pavement with a three-foot shoulder beyond. Voth testified that at the moment of the impact he observed a car coming into vision on the curve ahead distant about 400 feet. His testimony that this approaching car was that far away was corroborated by the circumstance that immediately following the collision the defendant jumped out of his car, ran ahead of the Chrysler, and by waving his arms stopped the approaching car before it reached the Chrysler. Hence, it will be observed that ample space to the left was available to the defendant for passing the Voth car and the two young men to its rear in complete safety.

This assignment of error submits the question whether the deceased was guilty of contributory negligence as a matter of law. The foregoing facts are capable of sustaining a finding that Holman, at the time of the collision, was walking upon the outer extremity of the right shoulder of the pavement and that only the left half of the car was occupying a space upon the hard-surfaced portion of the roadway. The above facts likewise indicate that the tail-light of the car was illuminated and that no one was obstructing the light. Behind the Chrysler was 1,000 feet of level, straight roadway. Ahead was approximately 400 feet more. To the left was ample space upon the hard-surfaced pavement for a car to pass, while to the right was more space available in the event of an emergency. Such being the facts, the question for decision raised by the motion for a nonsuit is whether it was incumbent upon Holman to maintain a constant lookout to the rear lest a car coming from that direction should fail to observe him.

■■ An automobilist who exercises due care may in an emergency use a portion of the roadway for making necessary inspections of his car, raising the top, making needed repairs, or for the performance of other acts rendered necessary by the inability of his car to proceed. Such actions, being incidental to travel, are regarded as a proper use of the highway: *Martin v. Oregon Stages,* 129 Or. 435 (277 P. 291); *Dare v. Boss,* 111 Or. 190 (224 P. 646); *Deitchler v. Ball,* 99 Wash. 483 (170 P. 123); *Schacht v. Quick,* 178 Wis. 330 (190 N. W. 87, 25 A. L. R. 130); 42 C. J. title Motor Vehicles, p. 1041, § 791. Hence, the conduct of the deceased in pushing the automobile along the highway when its supply of fuel had become exhausted could properly be regarded as a legitimate use of the road.

■ The Federal Supreme Court, and also this court, recently reiterated the rule that when fair-minded men can honestly disagree upon the question whether a given set of facts reveals negligence or the exercise of due care, the question is not one of law but of fact for settlement by the jury: *Gunning v. Cooley,* 281 U. S. 90 (74 L. Ed. 720, 50 Sup. Ct. 231); and *Ford v. Schall,* 114 Or. 688 (236 P. 745).

The contention that the deceased was guilty of contributory negligence seems to be divided into two subdivisions, as follows: (1) the three young men should have parked the car on the six foot shoulder immediately adjacent to the spot where the Chrysler stopped; and (2) they should have maintained a vigilant lookout to the rear and should have been prepared to step aside when they observed the approach of the Marmon while pushing the Chrysler ahead.

■ Disposing of the contention that the three young men should have parked the Chrysler immediately adjacent to the spot where it stopped, and that they were

guilty of negligence in deciding to push it 450 feet ahead to the graveled area alongside of the roadway, we notice that section 55-516, Oregon Code 1930, provides:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main-traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main-traveled portion of such highway * * *."

We believe that impartial minds could honestly conclude that the deceased and his companions were not guilty of any negligence in failing to shove the car onto the six-foot, rain-soaked, muddy shoulder to the right of the place where it stopped, and that they exercised reasonable prudence in deciding to shove it 450 feet ahead to the graveled area from whence it could proceed under its own power when a supply of gasoline had been obtained. It would seem that they were warranted in entertaining a belief that if all concerned exercised due care a car could be shoved 450 feet ahead in safety by three young men. Hence, we conclude that this portion of the contention presents no reason for a reversal: see *Reynolds v. Murphy*, 241 Mass. 225 (135 N. E. 116), where a somewhat similar question was held to constitute an issue for the jurors' determination.

Coming now to the second subdivision of the contention, the rule which governed the three young men in their conduct while shoving the car ahead was the much reiterated, platitudinous rule that they were bound to employ reasonable care. This simple formula is easier of statement than of application, but generally in instances of this kind the application of the rule is

for the jury and not for the court. The car was being shoved ahead, according to Voth, at a speed of about three miles per hour. If it was incumbent upon Holman, while he was exerting his efforts at the rear of the car, in the midst of a heavy downpour of rain upon a stormy night, to maintain a constant lookout to his rear and be prepared to jump out of the way of approaching vehicles, it would seem reasonable to conclude further that a passenger riding in leisurely comfort in a car proceeding at an equally low rate of speed would also be required to look to the rear and hold himself in readiness to leap lest the car be struck by another approaching from the rear. And if it is incumbent upon those riding in cars going at the rate of three miles per hour to exert such vigilance and make such preparations, it would seem equally reasonable to require others riding in cars traveling at fifteen and twenty miles per hour to maintain similar lookouts for cars going at thirty and forty miles per hour for fear lest they be overtaken and struck by heedless drivers approaching from behind.

However, we are satisfied that neither the leisurely occupant of a seat in an automobile nor an individual like Holman pushing a car ahead can shut his eyes to the attendant conditions and disregard evidences of approaching danger. The occupant of the rear seat is not in control of the car and the individual behind, supplying power, may be unable to glance continuously to his rear, but both must exercise reasonable care for their own safety. In determining what constitutes reasonable care, Holman had a right to bear in mind that the car itself was of considerable size and, being of light color, could be seen from the rear by a car equipped with proper lights. Its red illuminated taillight would obviously cause him to believe that an

effective warning signal was properly displayed. The large rear window, capable as it was of reflecting the lights of approaching automobiles, afforded further notice to the drivers to the rear of the presence of the Chrysler upon the highway. The fact that the car occupied only three feet of the right portion of the highway, and thus left twelve or thirteen feet for the use of others, was also a circumstance which Holman was entitled to consider in determining the amount of vigilance which he was compelled to exert. Without doubt, the two young men must have known of the approach of the Marmon because Voth testified that its headlights illuminated the interior of his car. But its rapid approach—if, in fact, its approach was rapid—and the switching of its lights from bright to dim might have deceived the deceased into belief that it was farther away than it actually was. The strong north wind and the patter of the falling rain probably overcame the noise of the nearing Marmon. Moreover, Holman, if he was exercising reasonable prudence, was not bound to anticipate negligence upon the part of the approaching car and, in the absence of circumstances which would afford notice to the contrary, had a right to expect and act upon the expectation that the Marmon would exercise reasonable care, observe the rules of the road, and steer to the left at the appropriate time so as to avoid a collision with himself and the car he was shoving. For a general statement of the rule see *Murphy v. Hawthorne,* 117 Or. 319 (244 P. 79, 44 A. L. R. 1397); *Pinder v. Wickstrom,* 80 Or. 118 (156 P. 583). For a specific application, we cite *Hanson v. Aldrich,* 199 Iowa 168 (201 N. W. 778), wherein the automobile of Hanson became stalled upon a roadway twenty-seven feet wide in the night time when its tail-light had refused to illuminate. Hanson, seeing the

lights in the distance of defendant's approaching car, walked back twelve or fifteen feet from the rear of his own car and waved his arms as a signal to the defendant to stop. The defendant, however, kept on coming, collided with the plaintiff and injured him. The court held referring to the plaintiff:

"Clearly, he was in a position where he had a legal right to be. * * * He was in a reasonably safe position, and he had the right to rely on the fact that the defendant, in the exercise of reasonable care, would so operate his car as to avoid a collision. The path of the defendant's car was not fixed, like a railroad train, to any particular line of travel. He had ample space to pass the plaintiff and his car on this particular highway, and plaintiff was not called upon to anticipate negligence on the part of the driver of the other car. * * * Plaintiff could not know that defendant had no intention of stopping or turning to the left. Plaintiff had reason to think that he was within a zone of reasonable safety. Whether or not plaintiff had time to step aside after he discovered the defendant was not going to turn, was a question for the jury to determine, under the circumstances. * * * We cannot escape the conclusion, under the facts of the instant case, that the court did not err in submitting the question of contributory negligence to the jury for determination."

See also *Hart v. Morris*, 259 Mass. 211 (156 N. E. 15).

The governing principles of law being such as we have reviewed above, we believe that fair-minded men could reasonably draw from the evidence a conclusion that the deceased was free from negligence. In *Dickerson v. Mutual Grocery Co.*, 100 N. J. L. 118 (124 Atl. 785), the New Jersey court arrived at a similar conclusion concerning a plaintiff who was pushing his automobile along a roadway to a place where he expected to replenish his exhausted supply of gasoline

when he was struck by the defendant's car proceeding at the rate of seven miles per hour through the fog on a dark night. The court held that the question of plaintiff's contributory negligence was an issue for the jury even though the evidence indicated that the plaintiff's body obscured the tail-light of his car.

The second assignment of error challenges rulings made by the circuit court which overruled the defendant's objections to a series of questions propounded to him upon cross-examination, inquiring why he did not place the injured men in his car and proceed to a hospital. The defendant argues that the questions were intended to excite prejudice against him by making it appear that he was heedless of the mute demands for immediate help made by the condition of the victims. It is manifest that the inquiries were not permissible if that was their purpose: *Barry v. Second Ave. R. Co.*, 16 N. Y. S. 518 (Aff. 136 N. Y. 669, 33 N. E. 336). However, we notice that the defendant's objections during the cross-examination did not specify the above as his reason. His failure to bring to the attention of the trial judge the objections urged upon us would of itself justify us in sustaining the circuit court: *Wallace v. American Toll Bridge Co.*, 124 Or. 179 (264 P. 351); *American Oil Etc. Co. v. Foust*, 128 Or. 263 (274 P. 322). The plaintiff expressly disclaims the purpose imputed to him by the defendant and declares that the questions were intended to win an admission that it was impossible for the defendant to convey the helpless men to a hospital because his car was not in a condition for operation, as the defendant had testified, but was in a disabled condition with its rear wheels sunk deep in the mud of the ditch beside the roadway, as plaintiff's witnesses had testified. The mere fact that an item of evidence may serve an

improper purpose does not warrant its exclusion if it is capable of serving a legitimate purpose and supporting a real issue: Wigmore on Evidence (2d Ed.), § 215. The testimony was in conflict as to where the Marmon was left by the collision. The defendant testified that his car came to a stop with all four of its wheels upon the hard-surfaced pavement and remained there for several minutes until he backed it into the ditch. He admitted that it could not pull itself out of there without the help of another car when he later wanted to proceed on his way. Voth testified that the Marmon's rear wheels were in the ditch when it came to a rest following the collision. Other witnesses supported him. As we indicated in our consideration of the first assignment of error, the plaintiff employed this evidence as the basis for an argument that the Marmon was approaching so rapidly that the impact somehow threw it into the ditch. The plaintiff avows a belief that the defendant would have conveyed the injured men to a hospital if his car was capable of operation, and that the purpose of the questions was to compel an admission that the Marmon was in the ditch, as described by plaintiff's witnesses, incapable of use, and that hence defendant could not take the victims to medical aid. Accepting the plaintiff's assurance that such was the purpose of the inquiries, we conclude that the circuit court did not abuse its discretion when it overruled defendant's objections.

█ The third assignment of error challenges an instruction which stated to the jury that the deceased and his companion "had a right to move said car to get the same off said main-traveled portion of said highway so long as they operated the same on the right-hand side thereof where it would have been operated had it been operated under its own power. It

was not unlawful for plaintiff's deceased to take a position to the rear of the Voth car and to assist in pushing the same along the highway upon the right-hand side thereof. However, it was incumbent upon him to act as an ordinarily prudent person would have acted under the same or similar circumstances." Defendant contends that the instruction was not pertinent to any issue in the case because he had made no contention that Holman violated a statute by walking behind the car, and that the instruction was also misleading because it might have led the jury to believe that if Holman had a right to be where he was his presence could not have constituted negligence. We believe that both contentions are without merit. The answer charged Holman with negligence "in occupying a place of danger by walking behind said Voth automobile and pushing it along the pavement while it was in the right-hand lane of travel." The contention that the instruction was misleading is fully negatived by the proviso accompanying it which informed the jury that it was incumbent upon Holman to act as a prudent person would have acted under like circumstances, and by other portions of the instructions which with painstaking care defined common law and statutory negligence, and pointed out at length to the jury that each individual must always exercise due care for his own safety.

Having arrived at the above conclusions, it necessarily follows that the judgment of the circuit court is affirmed.

BEAN, C. J., RAND and KELLY JJ., concur.