Argued September 13; affirmed October 11, 1938

# MALETIS *v.* PORTLAND TRACTION COMPANY

### (83 P. (2d) 141)

*Earl S. Nelson,* of Portland (Griffith, Peck & Coke, of Portland, on the brief), for appellant.

*J. R. Callahan,* of Portland (C. M. Thomas and Edwin H. Lewis, both of Portland, on the brief), for respondent.

RAND, J. The plaintiff, Marina Maletis, by her guardian ad litem, brought action and recovered judgment against the Portland Traction Company for injuries sustained by coming in contact with a moving bus belonging to and operated by the defendant company.

It was alleged in the complaint and established upon the trial that, at the time of the accident, the plaintiff was only twenty-three months old and that she was playing with her brother, five years of age, on the sidewalk immediately in front of the house in which she was living with her parents on Woodstock street in the city

of Portland, and that, just prior to the accident, the driver of the bus drove up and parked it close to and parallel to the outer edge of the sidewalk and directly in front of the house and opposite to the place where the children were playing.

The evidence further showed that the distance between the house and the outer edge of the sidewalk, where there was a gutter but no curbing, was only some five or six feet; that, upon parking the bus, the driver alighted and for a few minutes walked up and down on the sidewalk, after which he re-entered the bus and drove away. According to his own testimony, when re-entering the bus, he saw these children at play on this narrow sidewalk and, so far as his testimony shows, in starting the bus and driving away, he paid no further attention to them.

Immediately after the bus had started, one of the children screamed and plaintiff was found lying in the gutter on the outer edge of the sidewalk with her dress torn, her body badly bruised and four ribs broken. None of the witnesses saw the accident happen, but several witnesses saw the child lying in the gutter immediately after the bus had started and the whole evidence shows that it was caused by the moving of the bus from the place where it had been parked.

The reason given for the parking of the bus at that time and place was that it was being operated on scheduled time and the time for its departure from that point had not yet arrived.

■ The cause was tried to a jury and the defendant assigns as error the giving of one instruction and the refusal of the court to give two instructions requested by the defendant. The one given is as follows:

"You are instructed that as a matter of law an infant two years of age is not presumed to know of the

existence of danger, to have sufficient intelligence to protect himself or herself from its consequences, and, therefore, if such an infant of that age is found in a place where he is exposed to danger and in a situation where he can easily be seen, it is the duty of every person approaching him to use all care and caution that such person can command to avoid injury to such infant.''

The defendant's objection to the instruction is confined to the last clause which, in effect, states that if an infant, two years of age, is known to be in a place of danger, it is the duty of every person knowing of such danger to use every care and precaution to avoid injury to such infant. This the defendant contends required it to exercise more than ordinary care in protecting such infant from the threatened danger.

We think that the objection urged comes within the rule correctly stated in *Wallace v. Railway Co.*, 26 Or. 174 (37 P. 477, 25 L. R. A. 663), and is controlled by it. There, plaintiff's intestate, a child of six years had been run over and killed on a public street crossing in the city of Portland by a streetcar which was being operated at the time at an excessive and dangerous rate of speed. In that case, after pointing out that a child of that age is not required to exercise the same judgment as would be required of an adult in passing in front of a streetcar and is only required to exercise the same degree of care and prudence which might reasonably be expected, under the circumstances, of a child of that age and capacity, then said:

''* * * The term 'ordinary care' is a relative term, always dependent on circumstances. What would be ordinary care in one case would be the grossest neglect in another. Thus, if an adult should be seen on a street car track it might be assumed that he would leave the track before the car reached him, but no such presump-

tion can be indulged in as to the conduct of an infant of tender years; and hence when the court said that if the servants of defendant saw this child on the track, they were required to use more than ordinary diligence to prevent injury, it was only, in effect, saying that the age of the child required the highest degree of care on the part of the servants of the defendant, and nothing short of that would be ordinary care under the circumstances.''

 The defendant also contends that, under the evidence, the injury sustained by the plaintiff was caused by a pure accident. The words ''mere accident'' or ''pure accident'' imply that the accident was caused by some unforeseen and unavoidable event over which neither party to the action had control and exclude the idea that it was caused by the carelessness or negligence of the defendant, in which case, of course, the defendant would not be liable. 1 C. J., p. 395 and note.

█ It is clear from the evidence above referred to, that the driver, upon seeing these very young children playing on this narrow sidewalk in such close proximity to the bus, knew that they might be in danger when the but was moved and that, because of their age, they were incapable of foreseeing and understanding the danger. With notice of these facts, it was his duty, in moving the bus, to take every reasonable precaution to avoid injuring them. Nothing short of that would be ordinary diligence or due care upon his part.

The second assignment of error is based upon the refusal by the court to charge the jury to disregard the contention of the plaintiff that the bus was started without observing that the plaintiff might be affected by the movement. In view of what has been said, the request was properly denied.

██ The third and last assignment of error relates to the refusal of the court to charge the jury to disregard

plaintiff's claim that there was an obligation upon the operator of the bus to sound the horn before starting "for the reason that the plaintiff was not a pedestrian within the meaning of the law requiring the sounding of a horn before starting and for the further reason that the failure to sound a horn, if such failure occurred, was not a negligent act which was the proximate cause of the accident." In lieu of that instruction, the court charged as follows:

"It is not necessary under the Oregon law for an automobile driver who is starting an automobile to sound his horn by way of signal, unless in the exercise of due care and caution the driver could or would have seen that a pedestrian or other vehicle might be affected by such movement. The mere fact that a pedestrian was in the line of travel does not necessarily require the sounding of the horn unless in the exercise of due care and caution under the circumstances the driver of the automobile should have known that a pedestrian was in its path.

"In this connection it is proper for you to consider all the circumstances in this case. Even if you find that the driver of this motor bus did not sound the horn, and if you further find that he was negligent in that respect, it would still be for you to determine whether or not such negligence proximately caused the accident."

Our statute, section 55-2309, Oregon Code Supplement 1935, provides as follows:

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn * * *".

That statute makes no distinction in the requirements to sound the horn between minors and adults. It is the duty of the operator of a motor vehicle to sound

the horn as much when minors may be affected as adults. The operator's failure to sound the horn was alleged in the complaint as an act of negligence upon the part of the defendant. Whether the sounding of the horn would have frightened the plaintiff and caused her to keep away from the bus is a matter of pure speculation and, under the instruction given by the court, the question was properly submitted to the jury to determine whether the failure of the operator was the proximate cause of the injury. The testimony showed that the mother of the child, at the time the bus was started, was standing close to the front door of the house, talking with her brother, and within a few feet of where the child was. Had the horn been sounded before the bus was moved, the jury would have been justified in inferring that, upon hearing the horn, the mother would have looked and seen her child in danger and perhaps would have been able to save the child from injury.

■ A pedestrian is defined as "going on foot;" "of or pertaining to walking;" "a walker;" "one who journeys on foot;" and "a foot traveler". See Webster's New International Dictionary. Under these definitions, a child walking on the sidewalk is as much a pedestrian as if walking on the street, although the necessity of sounding the horn in such case before moving a motor vehicle would not be as great as if the child were walking on the street. Since this child was in a situation where she might be affected by the movement of the bus, it would seem to be the duty of the driver to sound the horn before moving the bus if he had any reasonable grounds for believing that injury to the child would be thereby averted. Whether so or not, it was a question for the jury under the particular evidence in the case.

The further question as to whether his failure to sound the horn was a proximate cause of the injury was properly submitted to the jury. For that reason we think that no error was committed by the court's refusal to give the instruction requested in view of the one actually given by the court.

Finding no error in the record, the judgment is affirmed.

BEAN, C. J., and BAILEY and LUSK, JJ., concur.