JOHN WOSCHENKO, PLAINTIFF-RESPONDENT, v. C. SCHMIDT & SONS, INCORPORATED, A FOREIGN CORPORATION, DEFENDANT-APPELLANT; MICHAEL BUGLIO, INDIVIDUALLY AND TRADING AS IMPERIAL DISTRIBUTING COMPANY, AND SILVIO VENTURI, ALSO KNOWN AS VITO SILVIO, DEFENDANTS-APPELLANTS.

Argued April 18, 1949—Decided May 16, 1949.

*Mr. Herbert Horn* (*Messrs. Lloyd & Horn,* attorneys) argued the cause for the appellant C. Schmidt & Sons, Inc.

*Mr. Samuel P. Orlando* argued the cause for the appellants Michael Buglio and Silvio Venturi.

*Mr. Robert G. Howell* (*Messrs. Stanger & Howell,* attorneys) argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. This appeal brings before us for review a judgment rendered by a jury at the Cumberland Circuit of the former Supreme Court awarding damages in a negligence case against both defendants.

The essential question presented is whether, assuming negligence on the part of both defendants, the proofs were sufficient to present a jury question as to whether the negligence of either or both was a proximate cause of the accident.

Plaintiff attended a christening party given by one Zatzariny on the night of September 25, 1943, at a public hall in Vineland, at which there were well over 100 guests. To enliven this affair Zatzariny had ordered from defendant Buglio, a beer distributor, two half barrels of beer. On the afternoon of the party defendant Venturi, an employee of

Buglio, together with a helper delivered to the hall two wooden half barrels of 'defendant Schmidt's beer, together with a dispensing box containing coils, which would normally be packed with ice to cool the beer, a spigot, the necessary connecting hoses, a tapping rod and a tank containing 550 pounds of carbon dioxide gas.

At the request of one Lubin, a relative of Zatzariny, and his friend Sitkoff, who were then at the hall preparing for the party on behalf of Zatzariny, Venturi tapped one of the barrels and connected it with the dispensing box and the tank of gas. After the tapping approximately four glasses of beer were drawn to determine whether the unit was operating properly, after which Venturi and his helper departed. There is conflict in the testimony as to whether Venturi opened the valve of the gas tank momentarily to see that it was flowing and also to instruct Lubin and Sitkoff in the use of the valve. If it was opened it is clear that it was closed tightly immediately thereafter, the handle removed by Venturi and given to Lubin who placed it on top of a tall closet nearby and out of sight.

The party commenced about 7:00 P. M. and from that time on until between 11:00 P. M. and midnight Lubin, acting as bartender, dispensed a large quantity of beer both in glasses and pitchers. The beer ran normally throughout this period and Lubin testified there was no trouble with the pressure and at no time was it necessary to use the valve to obtain any gas. After Lubin departed Sitkoff and Zatzariny himself joined in the dispensing of beer, still from the same barrel. It still ran normally until sometime after midnight when the flow slowed and Zatzariny suggested that the second keg be tapped. This was not done, however, because it was then too late in the opinion of some. Notwithstanding the reduced flow of beer it was claimed by plaintiff's witnesses that no gas was drawn from the tank.

Approximately ten to fifteen minutes after the flow of beer had slowed, and while plaintiff was approaching the dispensing unit to obtain a glass of beer, the barrel exploded, the force of the explosion being sufficient to drive it up to the

ceiling knocking a large hole in it and a complete half section of the bottom head of the barrel was blown away. Plaintiff suffered severe injuries to his face requiring the enucleation of the left eye.

The negligence charged against defendant Schmidt was that it used a rotten and defective keg, failed to inspect it for any defective condition and failed to warn persons of its defective condition. That against Buglio and Venturi was that they installed the keg and dispensing apparatus without a gauge in the gas tank and distributed beer in a keg which they should have known was defective. This latter charge was contained in three separate counts which were disposed of by the trial court in favor of defendants on a motion for a directed verdict.

To procure a normal flow of beer from a set up such as was here used the pressure had to be kept down to 15 or 20 pounds. The beer flowed properly for a period of nearly six hours. The keg was nearly empty at the time of the explosion and the flow of beer had nearly ceased.

The case was not tried on the theory of *res ipsa loquitur* for the obvious reason that both the beer barrel and the pump equipment, coils and tank were not in the exclusive control of either of the defendants for some five or six hours prior to the explosion. *Cf. Den Braven v. Meyer Bros.*, 1 *N. J.* 470, 64 *A.* 2d 219 (*Sup. Ct.* 1949); *Glicken v. Bergman*, 117 *N. J. L.* 306 (*E. & A.* 1936); and we are led to the inescapable conclusion that the jury ignored the question of proximate cause and found for the plaintiff simply because an unexplained accident happened. On the proofs here this case is clearly distinguishable from *Taylor v. Berner*, 7 *N. J. Misc.* 597 (*Sup. Ct.* 1929); affirmed, 106 *N. J. L.* 469 (*E. & A.* 1929); *Dunn v. Hoffman Beverage Co.*, 126 *N. J. L.* 556 (*E. & A.* 1941); *MacPherson v. Canada Dry Ginger Ale Co.*, 129 *N. J. L.* 365 (*Sup. Ct.* 1943). *Cf. Healey v. Trodd*, 124 *N. J. L.* 64 (*E. & A.* 1940).

It was the bounden duty of the plaintiff to prove the proximate cause of the accident and resulting injury to plaintiff. Proximate cause means there must be no other

culpable and efficient agency intervening between the defendant's dereliction and the injury. *Wiley v. West Jersey R. R. Co.*, 44 *N. J. L.* 247, 251 (*Sup. Ct.* 1882).

█ As to either or both of these defendants there are obvious missing links in the chain of causation. As to the defendant brewer Schmidt, while there is proof that the barrel head was partially rotted, that inspection of re-used barrels was merely visual without any tests as to pressure, and that such decay inside a barrel could not be discovered by such inspection, no reasonable or proper inference could be drawn from such proof that any of these facts or omissions were the proximate cause of the explosion. The proofs as to the pressure of the beer in the barrel up to the time of its delivery to the hall seem to negate any inference of negligence in filling the barrel with beer.

There is no proof of the physical laws or forces which would establish the fact that the additional pressure generated by the handling of the barrel in the usual, normal or foreseeable manner, would break through the weak section of the barrel head with such force as to project the barrel up with the destructive force that produced the injury here complained of. This link in the causal connection is completely missing. Nor is there any proof of what inside pressures, whether they were 40, 60 or 100 pounds per square inch, could produce such a result under the proven conditions or that any such pressures beyond 30 pounds would develop from the normal handling of the barrel.

█ It may well be for example that a defective automobile tire bursting at 35 pounds pressure per inch will not dangerously lift or deflect an automobile, but the answer may be otherwise where an almost empty beer barrel is concerned. The establishment of such a proposition is an integral part of the plaintiff's case and cannot be left to speculation or inference as far as the defendant brewery is concerned, particularly in view of the fact that the accident could have been the probable result of the negligence of the other defendant, the distributor who installed the pumping equipment. *Robbins v. Thies*, 117 *N. J. L.* 389, 394 (*E. & A.* 1937).

The complaint charges the distributor with negligence in installing and providing defective and improper equipment and in failing to properly instruct and warn the users thereof of the dangers incidental and inherent in the operation of such equipment.

Here again there are missing links in the chain of causation. The installation was made early in the afternoon, the equipment operated in a normal and satisfactory manner for several hours, toward the end of which, the flow of beer from the barrel reached a low and unsatisfactory point. This latter result is consistent with the testimony that the valve of the tank of gas had been shut tight after a small amount of gas had been let into the keg when the coils and tap were originally connected up.

As far as the proofs show the key to the gas tank, without which it could not be opened, was given to Lubin and placed on the top of a six foot closet out of sight and was still there at the time of the explosion. There is no proof that gas was introduced into the barrel between the point when the beer flowed slowly and the time of the explosion. Under such facts and circumstances no inference of negligence can be properly drawn in the present state of the proofs from the failure to install a pressure gauge or shut-off valve because as the proofs exist no gas leaked into the barrel from the tank and no additional gas was apparently let into the keg from the time the pumping equipment was installed up to the moment of the explosion.

If there should be proof that gas was let into the tank by someone, then the absence of a gauge or shut-off valve becomes important because the introduction of gas into a beer keg or barrel from a gas tank or container in which the gas is under a pressure of 550 pounds, presents a potential danger when done without such gauge or shut-off valve and operated by skilled workmen, and has unlimited possibilities of readily foreseeable danger when the task is left in the hands of ordinary folk attending a celebration such as here took place. Without such a gauge or valve an inference of negligence could be drawn in such circumstances in favor of the lay

person left to operate the equipment in the absence of clear and explicit operating instructions by the installing distributor or his agent or of proof that such gauge or valve would not prevent the result which here occurred. A similar inference is deducible in favor of innocent bystanders or participants whether such instructions were given or not.

All that has been said with respect to the proper installation of the equipment by the distributor is, of course, subject to and controlled by the burden imposed upon the plaintiff to prove that the negligent introduction of gas into the keg or the failure of such equipment solely or concurrently proximately caused the explosion.

A very important witness, Sitkoff, was not produced and the missing links in the testimony necessary to show that the negligence of the defendants did or did not proximately cause the explosion and the resulting injury may possibly be supplied by expert witnesses and it rather clearly appears that the effect of the forces involved is a subject of expert or professional knowledge and is not such as can be considered within the realm of ordinary common knowledge.

On the proofs here presented the jury was left in a position where it had to speculate and deal in possibilities rather than probabilities in order to hold the defendants liable. To recover for injuries which result from the negligent act of a party, where the evidence is circumstantial, the plaintiff must show not a possibility only, but a probability that the injury resulted from the defendant's negligence. *Austin v. P. R. R. Co.*, 82 *N. J. L.* 416 (*E. & A.* 1911); *Price v. New York Central R. R. Co.*, 92 *Id.* 429 (*E. & A.* 1918).

Since some proof was offered below as to the loss of earning capacity in the chicken business owned and operated by the plaintiff and since there was an exception to the part of the charge relating thereto and since the case will be retried, it should be noted that in actions of tort evidence of the nature and extent of the plaintiff's business and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received not on the ground of its furnishing a measure of dam-

ages to be adopted by the jury, but to be taken into consideration by the jury, to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury. Under the allegation of diminished capacity to labor, one who has testified that he had become unable to do in person all his work, may also testify as to the cost of help employed by him; such evidence tends to show decreased ability and the extent thereof. *N. J. Express Co. v. Nichols,* 33 *N. J. L.* 434, at 437 (*E. & A.* 1867); *Alexander v. Cheaster,* 110 *N. J. L.* 95, *pp.* 98, 99 (*E. & A.* 1933); *East Jersey Water Co. v. Bigelow,* 60 *N. J. L.* 201 (*E. & A.* 1897). But income or profits derived from a business requiring the investment of substantial capital or in which the injured person is engaged with others, or where he employs the labor of others cannot be accepted, as a measure of earning capacity. The measure of loss in such a case is the value of the plaintiff's services in the business. It is necessary to inquire into the character of the business also the capital and assets employed and proof of the loss of profits is properly admitted only where they can be shown to be the direct result of the plaintiff's absence, in which case they are received not as a distinct element of damage, but as evidence of the value of the plaintiff's services. The value of his services is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired together with personal acquaintance with the customers has a value in the commercial world readily recognized by any business man. The evidence must be such as to directly point up the value of the plaintiff's services in the operation of the business in which case it is not conjectural. See *Dempsey v. The City of Scranton,* 264 *Pa.* 495, 107 *A.* 877; *Cf. Offensend v. The Atlantic Refining Co.,* 322 *Pa.* 399, 185 *A.* 745, 17 *C. J.,* § 195, *p.* 894. In tort cases profits which are remote, speculative or uncertain are neither an element of damages nor evidence of damages. *Bates v. Warrick,* 76 *N. J. L.* 108 (*Sup. Ct.* 1908). They can only be recovered as damages where they might have been realized and where they are

capable of being estimated with a reasonable degree of certainty. *East Jersey Water Co. v. Bigelow, supra, p.* 209.

For the reasons stated the judgment below is reversed and a *venire de novo* will issue.

Appeal of C. Schmidt & Sons, Inc.:

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For affirmance*—Justice HEHER—1.

Appeal of Buglio:

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.