Argued January 24, reversed April 11, 1951

# BORGERT *v.* SPURLING ET AL.

230 P. 2d 183

*Herman P. Hendershott,* of Eugene, and *Robert B. Carmichael,* of Springfield, argued the cause and filed a brief for Respondent.

*Gordon Ramstead* argued the cause for Appellant. On the brief were Ramstead & Huey, of Eugene, and W. K. Rodman, of Springfield.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, WARNER and TOOZE, Justices.

LUSK, J.

This is an appeal by the defendant, Stanley G. Spurling, from a judgment for the plaintiff in an action against Spurling and two others to recover damages for personal injuries sustained in an automobile accident. The question for decision is whether the defendant Spurling was entitled to a directed verdict.

The facts of the case are as follows: On the night of August 1, 1948, the plaintiff, Ned Borgert, and six others—four young men and two young women—were

returning to their homes from a dance, traveling in a 1935 Ford sedan which was owned and driven by Don Potterf, one of the party. At about 12:30 A. M., as they were proceeding in a northerly direction on the Elmira-Franklin county road in Lane County, the car ran out of gasoline and stopped. Members of the party, including the plaintiff, pushed the vehicle onto the east shoulder of the road as close to an adjoining ditch as it could safely be placed. According to the evidence most favorable to the plaintiff the width of the shoulder was 3½ feet, so that some portion of the car remained on the main traveled part of the road. While they were in this situation the defendant, Alvin Fox, driving a 1946 Ford sedan, came upon them and stopped. He either offered his assistance or it was solicited, and he drove away in search of gasoline; but, finding none, returned, and thereupon someone in the party produced a hose with the suggestion that gasoline be siphoned from the tank of the Fox car into the tank of the Potterf car. In order to accomplish this Fox drove his car in a southerly direction alongside the Potterf car and parked it as close to the Potterf car as he could, the gasoline tanks of the two cars being about opposite each other. The right-hand wheels of the Fox car were either on or very close to the center line of the highway, and the east half of the highway was thus effectually blocked by the two automobiles. As they stood in that position, the Potterf car headed north and the Fox car headed south, an attempt to siphon gasoline directly from the Fox car to the Potterf car met with failure because the two tanks were on the same level. Some one then hit on the idea of using a hub cap as a receptacle for siphoned gasoline. This operation was undertaken by the plaintiff and Robert

Barnes, an occupant of the Potterf car, with the plaintiff in charge. The plaintiff and Barnes were at the rear of the Potterf car, and had just filled the hub cap with gasoline which the plaintiff was about to pour into the tank of the Potterf car, when the defendant Spurling, driving towards them from the south in an Oldsmobile, ran into them from the rear. Both Barnes and the plaintiff were injured, the latter so seriously that his right leg had to be amputated below the knee.

There is evidence that the Potterf car was equipped with a tail light which was burning, and all the evidence is in accord that the head lamps on the Fox car were burning. As to whether they were on "bright" or "parking" the testimony is in conflict. At the time of the accident Fox was in his car. He was not a witness. The evidence of others is that, as the Spurling car came in view, Fox blinked his headlights on and off. The defendant Spurling testified that as he was coming down a hill, the crest of which, according to the evidence, was about a half a mile to the south of the scene of the accident, he saw lights on the highway ahead which blinked twice and then were on bright. He took them to be the lights of a car in its own lane of traffic, and he was less than 100 feet away before he saw the Potterf car. He then applied his brakes and swung to the right, but it was too late for him to avoid a collision. There was evidence which would justify a finding that Spurling was driving at a high and excessive rate of speed. He skidded 54 feet after applying his brakes, and the Potterf car was propelled 85 feet 7 inches by the force of the collision.

The main traveled portion of the road was paved with asphalt. There is conflict in the testimony as to the width of the road. A state police officer testified

that the main traveled portion was 18 feet 3 inches wide, and the shoulders on either side 2 feet wide; the plaintiff that the main traveled portion was 21 feet in width, the shoulder on the east side 3½ feet and the shoulder on the west side 5 feet; the defendant Spurling that the main traveled portion was 18 feet 6 inches, the shoulder on the east side 2 feet 6 inches and the shoulder on the west side 3 feet. All three witnesses measured the road.

The night was dark but the weather was clear and the pavement dry.

In his complaint the plaintiff alleged that the automobile driven by the defendant, Alvin Fox, was owned by his father, the defendant, Frank J. Fox, and was kept by the latter for family uses and purposes, and he charged that these defendants were negligent in that "said Alvin Fox parked said motor vehicle of defendant, Frank J. Fox, in the center of said county road", and that this negligence, together with that of the defendant Spurling, was the proximate cause of defendant's injuries. The defendants Fox filed an answer, but made no appearance at the trial, which proceeded against the defendant Spurling alone. The plaintiff testified that he had made a settlement with the defendants Fox for $2,000.00 but that he had not signed a release or received any money from them. After judgment was entered against the defendant Spurling an order based on a stipulation of plaintiff and the defendants Fox was entered dismissing the action as to those defendants.

The defendant Spurling in his answer charged that plaintiff's injuries were "the result of the concurring negligent acts and omissions of the plaintiff and the

defendants, Frank J. Fox and Alvin Fox" in the following particulars among others:

"(a) Plaintiff voluntarily placed himself in a place of extreme danger, and in a blind spot behind an automobile that had no tail lights alongside of a car headed in the opposite direction with its headlights turned on bright.

\* \* \*

"(c) That the Potterf car was parked on said highway when it could have been easily moved off the highway, and with and through the joint efforts of the plaintiff, who acquiesced in said parking on an improved and paved public highway without any tail light, and in a position that failed to leave sixteen feet (16′) of unobstructed highway opposite said parked car.

"(d) That plaintiff failed to exercise due and prudent care for his own safety; and

"(e) That plaintiff failed to keep a proper lookout for other traffic on said highway, and particularly this defendant's car.

"(f) That the Fox car was parked in the center of said highway headed in a southerly direction with its headlights turned on bright, and said driver failed to leave sixteen (16′) feet of unobstructed highway opposite said parked car."

The defendant Spurling moved for a directed verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law. An assignment of error based on the denial of this motion presents the only question which calls for consideration on this appeal.

■ In disposing of that question we accept as true the evidence most favorable to the plaintiff. Aside from the defendant Spurling's denial that he was driving at an excessive rate of speed, the testimony presents no conflicts except as to the width of the road

and the question whether the headlights of the Fox car were on "bright" or on "parking" (by the latter expression used by the witnesses we understand that they meant dimmed or tilted downwards). These discrepancies, however, are not material.

We call attention first to the statute which regulates parking on the highways of this state, § 115-353, O.C. L.A.:

"(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 16 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.

    &#42;   &#42;   &#42;

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position, nor to emergency cars or vehicles of the police, traffic or sheriff's office, or the fire department or ambulances where such vehicles at the time are actually used in an emergency which necessitates a violation of the provisions hereof.

    &#42;   &#42;   &#42; "

■ Defendant Spurling charged that the Potterf car was parked in violation of these provisions. But the car was disabled, and there is evidence that it was moved as far off the pavement as possible and that, before the Fox car was parked alongside it, more than 16 feet of unobstructed highway was left for the passage of other vehicles. In these circumstances, under our decisions, the question whether the car was parked in violation of the statute was a question for the jury. *Morris v. Fitzwater,* 187 Or. 191, 197, 210 P. 2d 104; *Hornshuh v. Alldredge,* 149 Or. 419, 424, 41 P. 2d 423; *Holman v. Uglow,* 137 Or. 358, 366, 3 P. 2d 120; *Martin v. Oregon Motor Stages, Inc.,* 129 Or. 435, 441, 277 P. 291; *Dare v. Boss,* 111 Or. 190, 197, 224 P. 646. Had the Fox car never come upon the scene, and had the plaintiff been injured while engaged about the rear of the Potterf car in making some necessary repair or filling the gasoline tank, we would have had an entirely different case than the one actually presented, a case more like *Martin v. Oregon Stages, Inc.* and *Holman v. Uglow,* in which the question of contributory negligence was held to be for the jury. And see Annotation, 61 A. L. R. 1164.

■ Alvin Fox clearly violated the parking statute. His car was not disabled, and, Good Samaratin though he was, his generous impulses afforded him no exemption from the statute's command. As previously stated, the two cars completely blocked the passage of vehicular traffic on the east half of the road, and, even accepting plaintiff's measurements, less than 16 feet of unobstructed highway was left opposite the Fox car. With the headlights of that car burning and the probability, if not the certainty, that they would obscure the tail light of the Potterf car to the rear of

those lights, a highly dangerous situation was created, especially as it would be natural and probable that a motorist approaching from the south would assume, as Spurling testified he assumed, that the lights were those of a car on its own side of the road. The laws certainly would not require him to assume anything different unless he knew to the contrary.

■ The evidence in some respects is too indefinite and uncertain to permit us to say that the plaintiff had or exercised any such control over the movement of the Fox car, that he could be held legally responsible for the illegal and negligent act of Alvin Fox or for the dangerous situation created by the juxtaposition of the two cars. But the plaintiff knew, or should have known, of the dangerous situation, and he accepted it as the means through which the Potterf car might be gotten on its way again. And it is conclusively established for the purposes of this case, not only that Alvin Fox, as alleged in the complaint, parked his car ''in the center of said county road'' but that this was an act of negligence which was a proximate cause of plaintiff's injury. As stated in IV Wigmore, Evidence (3d ed.) 45, § 1064, ''The pleadings in a cause are, for the purposes of use in that suit, not mere ordinary admissions * * * but judicial admissions * * * ; *i.e.* they are not means of evidence, but a waiver of all controversy (so far as the opponent may desire to take advantage of them) and therefore a limitation of the issues.''

In these circumstances, it might well be urged that the plaintiff was guilty of negligence in undertaking at all to busy himself about the rear of the Potterf car. Whether this be so or not, it cannot be doubted that reasonable care for his own safety called for the exer-

cise of a high degree of vigilance while he was thus engaged. The fact is, however, that he took no care whatever, as the following excerpt from his cross-examination demonstrates:

"Q. When you say you took it over you mean you were going to get gas from the Fox car into the Potterf car?

"A. Nobody else could do it and I took it over. I wanted to get home.

"Q. Did you realize you were in a dangerous position in the highway at that time?

"A. No, sir, I didn't believe anybody would come down the highway and run into me.

"Q. You thought you were perfectly safe in standing where you were?

"A. I presumed that somebody would see the lights of the car on the highway and would surely slow up.

"Q. Where were you standing at the rear of the Potterf car? Were you closer to the gas tank on the Fox car?

"A. Yes, sir.

"Q. And Mr. Barnes was towards the center of the Fox car?

"A. Yes.

"Q. Who had hold of the hose? Was it you or Barnes?

"A. At the time I think we was all talking. I think I was getting ready to stand up.

"Q. You had just filled up the hub cap with gas?

"A. That's right and I just got turned around and all I saw was a flash right after that.

"Q. Did you look up the highway to the north during this operation?

"A. No, sir.

"Q. Did you look to the south?

"A. Well, sir, I expected somebody else would warn me.

"Q. Did you ask anybody to keep a look out for you?

"A. No, I don't believe so.

"Q. You were in charge of that operation yourself at the time?

"A. Yes, sir."

There were seven other people at the scene. While it does not definitely appear, we infer that Alvin Fox was seated in his illegally parked car. The witness Effinger was at the front of the Potterf car. One of the young women was in that car. Barnes was helping the plaintiff siphon gasoline and the others were somewhere about the rear of the Potterf car. The plaintiff expected, he testified, that "somebody else would warn me", but he did not even ask any of the others to keep a lookout, and evidently no one did except Fox, for no warning was given. For a somewhat similar case in which the plaintiff was held guilty of negligence as a matter of law see *Tibbetts v. Dunton,* 133 Me. 128, 174 A. 453. Effinger testified that he saw the approach of the defendant Spurling's car but only just in time to escape being run over by the Potterf car after it was struck. The plaintiff was not warranted in relying for protection on the lights of the Fox car, for, under the circumstances, they were only an additional source of danger to him.

■■ We have examined the decisions cited in the briefs of counsel and many others. No good purpose would be served by analyzing them here nor by pointing out the differences in factual situations in cases relied on by the plaintiff to support his claim that the question of contributory negligence here was for the jury. Generally, of course, that is so, but where, as in this case, there is no room under the evidence for rea-

sonable differences of opinion, it becomes the duty of the court to determine the question as a matter of law. *Young v. Prouty Lumber Co.*, 81 Or. 318, 159 P. 565. Natural sympathy for a young man who has received injuries resulting in the loss of a leg has led us to examine the case with great care, and it is with reluctance that we reach the conclusion that he is precluded by his own negligence from recovering from the defendant Spurling. That his negligence contributed to his injury we think there can be no doubt. *Martin v. Oregon Motor Stages, Inc.*, supra, 129 Or. 441; *Tibbetts v. Dunton*, supra; *Chadwick v. Ek*, 1 Wash. 2d 117, 95 P. 2d 398.

It is our opinion that the Circuit Court erred in denying the defendant's motion for a directed verdict. The judgment must, therefore, be reversed with directions to enter judgment for the defendant Spurling.