Argued February 5, reversed and remanded March 11, petition
for rehearing denied April 1, 1959

POPE *v.* HELDMAN

336 P. 2d 63

*Thomas H. Tongue, III,* Portland, argued the cause
for appellant. On the briefs were Hicks, Davis,
Tongue & Dale and William M. Dale, Jr., Portland,
Darling & Vonderheidt and Frank R. Lacy, Eugene.

*Windsor Calkins,* Eugene, argued the cause for the
respondent. On the brief were Calkins & Calkins,
Eugene.

Before McAllister, Chief Justice, Rossman, Perry
and Sloan, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff, a child 5 years and 2 months of age who appears by guardian ad litem, from a judgment which the circuit court entered in favor of the defendant after sustaining the latter's motion for a directed verdict. The plaintiff submits one assignment of error. It challenges the order which directed the verdict in defendant's favor.

August 13, 1955, at 1:30 p. m. when the plaintiff was entering upon a thoroughfare near Eugene known as River Road the defendant drove his automobile into collision with him. This action which charges negligence seeks an award of damages for the resulting injuries. The complaint gives the following specifications of the charge of negligence: The defendant (1) failed to maintain a reasonable look-out, (2) operated his automobile at a speed greater than reasonable, (3) failed to exercise the degree of care exacted of one who drives in the presence of a child, (4) failed to sound the horn of his automobile and (5) failed to maintain reasonable control of his automobile. The order which directed a verdict in the defendant's favor was based upon a belief that the record contains no evidence in support of any of the specifications of neglect.

The course of River Road is north and south. It is a level, paved thoroughfare, 21 feet 10 inches wide. The defendant was driving his automobile south upon it and was approaching the place where a road, entitled Knoop Lane, enters from the west but does not cross River Road. The accident occurred upon River Road near its west edge and a little south of the south line of Knoop Lane. River Road, in the area where

the accident occurred, is equipped with a gravel shoulder about 6 feet broad. West of the gravel shoulder a grassy strip occurs and beyond it lies a sidewalk. The plaintiff had crossed the grassy strip, the gravel shoulder and had entered upon the pavement when he was struck. Although the evidence is not free from dispute, testimony which the jury could properly believe indicates that the pavement, shoulder and grassy area are upon the same level. The property west of River Road and fronting upon it in the vicinity of the Knoop Lane intersection is residential in character. The evidence mentions two business structures on the east side of River Road near the place where Knoop Lane enters. One is a store which stands upon or very near to the place which Knoop Lane would occupy if extended across River Road. The store stands back from the thoroughfare and provides space for the parking of automobiles between its front and the road. The other place of business is a gasoline service station which stands south of the store.

The defendant described the weather at the time of the accident as "nice and clear." The pavement, according to him, was dry and the visibility was good. He said that he was "fairly familiar" with the intersection and knew that children lived in its area. In the car with the defendant was his thirteen-year-old granddaughter.

As the defendant approached the Knoop Lane intersection from the north the plaintiff was pushing his bicycle across the gravel shoulder that adjoined the west edge of River Road. He was moving eastwardly toward the pavement. Immediately ahead of the defendant as he neared the intersection was a car which was forced to wait until traffic coming from the opposite direction could clear the intersection and it

could make an intended left-hand turn into the parking area of the store that stands to the left. The defendant stopped his car behind the one just mentioned and waited until it had made its turn. He testified that while waiting there he saw the plaintiff "standing, I would estimate, about six feet off of the pavement." Other evidence which the jury could properly believe indicated that the plaintiff was not standing but was walking toward the pavement. The defendant estimated variously the distance between his standing car and the plaintiff as 50 and 100 feet. According to a member of the state police who arrived at the scene of the accident a few minutes after it had occurred, the defendant gave him the following account of the manner in which the accident took place:

"* * * He explained that he was aware not really of consciously seeing the boy, but he was aware of the boy standing on the side of the road or being there, but he didn't see what he was doing or to that effect. But he was watching this vehicle make its left turn east over into the River Road Market area and had slowed to let it do so.

\* \* \* \*

"That is what I asked him, if he had seen him; and he said that he was aware that he was there * * *."

When the car ahead had made its turn the defendant put his car in motion, accelerated his speed and shortly heard a thud. At that point he exclaimed, "What was that?" and his granddaughter replied, "You hit a kid." From the time that the car ahead had made its turn until the defendant struck the plaintiff there was nothing to obstruct his view of the plaintiff. He thought his speed at the moment of impact was "about twenty miles an hour" and added, "It could have been slightly more, but I was positive I was under thirty." According to

the aforementioned state police officer, the defendant told him that his speed was "thirty miles an hour at the time of the accident."

An employee of the gasoline service station which we have mentioned saw the collision occur. He saw the defendant's car proceeding south at the same time that the plaintiff was pushing his bicycle toward the street. Noticing that a collision was impending, "I sort of froze," so the witness expressed himself. The front part of the defendant's automobile to the left of the right headlight struck the plaintiff and threw him over the car. The plaintiff was then, so this witness swore, two or three feet on the pavement. The witness further swore that the boy did not run or dart out upon the pavement but walked there. No one claims that the boy's movement was quick or sudden. The aforementioned police officer noticed a spot of blood upon the pavement and estimated that it was not "over twenty feet" from the south line of Knoop Lane and a foot from the west edge of the pavement.

The defendant, referring to the plaintiff, testified:

"* * * he was probably, oh, twenty-five, twenty, twenty-five feet south of Knoop Lane, and that is an estimate.

*          *          *

"Q Again, I just want to call to your attention your deposition taken on Monday of this week. Did you give this answer to this question:

"The boy was not at the intersection?

"Answer: No.

"Question: Where was he then?

"Answer: He was south of the intersection, probably, oh, fifteen feet.

"Did you give that testimony at that time?

"A I did."

The defendant conceded that he did not sound his

horn or apply his brakes as he approached the site where the accident occurred and that he did not change his course. It is apparent from his testimony that after having first seen the boy as he (defendant) came to a stop at Knoop Lane he did not see the child again until after he had struck him. As we have said, the boy was pushing a bicycle which we believe it is fair to assume augmented his conspicuousness. The defendant stopped his car promptly after the unfortunate collision. The plaintiff's bicycle was then under the car's front.

The foregoing evidence indicates that (1) when the defendant was 50 to 100 feet from the site of the impending collision he saw the plaintiff within 6 feet of the pavement, (2) when the defendant noticed the plaintiff the latter was walking toward the pavement, according to evidence which the jury could accept as truthful, (3) a short interval after the defendant saw the plaintiff he placed his car into motion and accelerated his speed to 20 to 30 miles per hour, (4) there was no obstruction between the plaintiff and the defendant to prevent the latter from seeing the plaintiff and the latter's bicycle, (5) after having seen the plaintiff when the defendant's car was standing still the defendant did not notice the plaintiff again and (6) even when the defendant's car struck the plaintiff who was two or three feet inside of the pavement the defendant did not see him and his only knowledge that he had hit something came to him from the sound of the thud and his granddaughter's exclamation, "You hit a kid."

The facts just summarized warrant a finding that after the defendant saw the plaintiff, while the defendant paused at the intersection, he diverted his attention from the plaintiff and the road ahead. Further,

they warrant a finding that he drove ahead and accelerated his speed even though his attention was given to something other than the situation ahead.

The foregoing, we believe, suffices as a statement of the facts.

In stating the legal principles which govern the issues of this case we will not consider the rules of contributory negligence. The respondent's brief leaves that subject unmentioned.

Restatement of the Law, Torts, § 290, says:

"For the purpose of determining whether the actor should recognize that his conduct involves a risk, he is assumed to know

"(a) the qualities and habits of human beings * * *."

Comment (j), which follows the foregoing, says:

"The actor as a reasonable man should also know the peculiar habits, traits, and tendencies which are known to be characteristic of certain well-defined classes of human beings. He should realize that the inexperience and immaturity of young children may lead them to innocently act in a way which an adult would recognize as culpably careless * * *. Thus, a motorist driving along a street, upon the sidewalks of which children are playing, is required to take into account the likelihood that one of them may suddenly dart into the street and must keep his car under a control which would not be necessary if the only persons on the sidewalk were adults. * * *"

Prosser, Law of Torts, § 32, p 135, states:

"In the application of the standard of reasonable conduct, it may be stated generally that:

* * *

"c. The actor may be required to anticipate the ordinary occasional negligence of others * * *."

At page 140 the text states:

"The duty to take precautions against the negligence of others arises, of course, only where a reasonable man would recognize the existence of an unreasonable risk. It becomes most obvious when the actor has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things. * * * And when children are in the vicinity, much is necessarily to be expected of them which would not be looked for on the part of an adult. It may be anticipated that a child will dash into the street in the path of a car * * *."

American Jurisprudence, Vol 5A, § 436, p 505, based in part upon an excellent annotation found in 30 ALR2d 5, says:

"The driver of a motor vehicle must be especially careful to avoid injury to children whose presence he is or should be aware of. While he is not an insurer against injuries to children from the operation of the car, he is required to exercise greater care toward children than toward adults, this greater care is, in one sense, but 'ordinary' care, namely, that degree of care which a man of ordinary prudence would exercise under the circumstances.

"A motorist who knows or should know that children may be reasonably expected to be in the vicinity must anticipate childish conduct. On discovery of the presence of small children on the highway one should travel at such a rate of speed, and bring his vehicle under such control, that an accident will be averted regardless of the unexpected and unforeseen movement of any of the children. One has no right to assume that a child, especially one of tender years, will exercise the discretion needed to protect it from the dangers of rapid automobile traffic. The law recognizes the fact that children are, depending upon their age, creatures of impulse, heedless of danger, and likely

to imperil themselves without regard for consequences, and the recognition of this fact places upon the operator of a motor vehicle an extra burden of care and caution where children are involved * * *

"* * * Particularly where the driver of a motor vehicle knows of the presence of a child or children in, near, or adjacent to the street or highway, or should know that children may reasonably be expected to be in the vicinity, the driver is under a duty to exercise care, usually stated to be reasonable, ordinary, due, or proper care, for the safety of the child or children. In such situations, moreover, a high degree of vigilance is required of a driver to measure up to the standard of what the law requires as ordinary care. * * *"

The foregoing quotations reflect the principles of law applicable to cases such as the one now at bar. They have been employed by this court in similar cases over a long period of time. For example, *Wallace v. Suburban Railway Co.*, 26 Or 174, 37 P 477, 25 LRA 663, which arose in the horse-and-buggy days was based upon the death of a child six years of age who was run down by the defendant's street car when the latter was going eight or ten miles an hour. In sustaining liability this court said:

"* * * They saw, or could, by the exercise of reasonable care, have seen, the children on or near the track a sufficient length of time before reaching the crossing to have slowed down and had the car under control, but, in place of doing so, were running at a dangerous rate of speed, as we must assume. In view of the rule that what is ordinary care and what negligence are inquiries to be answered in most cases by the jury, we think it cannot be declared as a matter of law that it is not negligence in those in charge of an electric street car who see, or can, by the exercise of ordinary care, see a company of small children on or near

the track at a public street crossing, and who they have reason to suppose are crossing the street, to attempt to pass them at the rate of eight or ten miles an hour. It was, therefore, clearly the province of the jury to ascertain the position of the child while the car was coming down the street, and whether a slower rate of speed would not have enabled the persons in charge of the car to have observed the child on the track in time to avert the accident. There was, then, sufficient evidence for the consideration of the jury, tending to show that the excessive speed of the car was negligence, and the proximate cause of the injury  *  *  *."

In *Forrest v. Turlay,* 125 Or 251, 266 P 229, the plaintiff, a boy eleven years of age, while playing in a public street, was injured by the defendant's automobile. In sustaining judgment for the plaintiff the decision said:

"*  *  *  It is a well-known fact that children often use streets to a certain extent for purposes of play. A motorist who approaches them when thus engaged must exercise care commensurate with the danger involved. He must be on the alert and keep his car under control. It will not do to drive on the assumption that a child will exercise the care to be expected of a person of mature judgment and experience. It is better to proceed on the theory that you never can tell which way a boy will jump.  *  *  *"

*Maletis v. Portland Traction Co.,* 160 Or 30, 83 P2d 141, says:

"It is clear from the evidence above referred to, that the driver, upon seeing these very young children playing on this narrow sidewalk in such close proximity to the bus, knew that they might be in danger when the but [sic] was moved and that, because of their age, they were incapable of foreseeing and understanding the danger. With notice of

these facts, it was his duty, in moving the bus, to take every reasonable precaution to avoid injuring them. Nothing short of that would be ordinary diligence or due care upon his part."

*Lane v. Hatfield,* 173 Or 79, 143 P2d 230, and *Davis v. Lavenik,* 178 Or 90, 165 P2d 277, ruled to similar effect.

Applying the foregoing principles to the facts developed by the evidence, we believe that it was error for the trial judge to have entered the order under attack. It was for the jury to say whether or not the defendant's conduct in casting out of his mind the plaintiff after he had seen him and then travel twenty to thirty miles an hour into the very vicinity where the child had been seen without looking ahead constituted the exercise of reasonable care.

We sustain the plaintiff's assignment of error. The judgment of the circuit court is reversed; the cause is remanded.