Argued December 5, 1961, reargued June 6, affirmed
June 20, 1962

# LEHR *v.* GRESHAM BERRY GROWERS ET AL

372 P. 2d 488

*James B. O'Hanlon,* Portland, argued the cause for appellants. With him on the brief were Mautz, Souther, Spaulding, Kinsey & Williamson, Douglas M. Thompson and Rockne Gill, all of Portland.

*Robert E. Jones,* Portland, argued, and *Clifford B. Olsen,* Portland, reargued the cause for respondent. On the brief were Roderick W. Kitson, Rader & Kitson, Robert E. Jones, and Anderson, Franklin, Jones & Olsen, all of Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

PERRY, J.

This is a tort action brought by the plaintiff to recover damages for personal injuries sustained in an automobile collision. At the close of the case the court directed the jury to find the defendants guilty of negligence and to determine the amount of plaintiff's damage, if any, suffered by him. From the judgment entered the defendants appeal.

The defendants' first assignment of error is based upon the trial court directing the jury to return a verdict in favor of the plaintiff and against the defendants. In determining this question it is necessary to consider whether or not the evidence is such that reasonable minds could reach different conclusions as to whether the defendants were or were not negligent and their negligence was or was not the proximate cause of the collision of the automobiles involved. *Shelton v. Lowell et al,* 196 Or 430, 249 P2d 958; *Clark v. Strain et al,* 212 Or 357, 319 P2d 940; *Borgert v. Spurling et al,* 191 Or 344, 230 P2d 183.

The record discloses that plaintiff was a passenger in an automobile driven by a Mr. Woods. This automobile was traveling in a westerly direction on S. E. Division street about three miles east of the city of Portland. The defendant Berry Growers' truck was driven by their agent and servant, the defendant Aylsworth, who was also traveling westerly on Division street following the automobile in which plaintiff was riding. It was daylight and both vehicles had been traveling at a speed of approximately 30 miles an hour. As they approached a point where 162nd avenue coming from the north forms a "T" intersection with Division street, both drivers began to slow their vehicles to approximately 20 miles per hour. On the northeast corner of this intersection there is an elementary school and a marked pedestrian crosswalk is provided over and across Division street. There is also an overhead traffic signal flashing a yellow signal located at this intersection. The automobile in which the plaintiff was riding stopped at the crosswalk and the defendants' truck struck the rear of the stopped vehicle. The defendant Aylsworth's version of what occurred is as follows:

"Q All right. And can you tell us just what happened as you approached 162nd street?

"A Well, we come to a school zone and there was children on the sidewalk, 15 or 20 feet from the curb, and I glanced to my left to see what was there, and as I looked back, why Mr. Woods had stopped pretty suddenly and I was—immediately I applied my brakes and just didn't have room to stop.

"Q Now when you observed those children to your right, Mr. Aylsworth, were they up near the curb or were they back from the curb a distance?

"A They were back 15 or 20 feet from the curb.

"Q And what direction were they moving?

"A They were moving south.

"Q In other words towards the curb?

"A Yes.

"Q Did you see any signal given by Mr. Woods?

"A No, sir."

The defendants' truck struck the rear of the automobile in which the plaintiff was riding. There is no charge of contributory negligence against plaintiff. He was a passenger in another automobile. Under these circumstances the position of the defendants can only be sustained if reasonable minds can draw reasonable inferences that the defendant Aylsworth was not negligent because there is no evidence of his negligence or there is substantial evidence that Woods was negligent and his negligence was the sole proximate cause of the accident.

ORS 483.312 provides:

"(1) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway."

Paragraph (2) ORS 483.102 provides:

"(2) No person shall drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care."

■ It is also well established law requiring no citation of authority that any driver of an automobile must

maintain such lookout for other users of the highway as a reasonable person would under the same or similar circumstances.

■ If two motor vehicles are proceeding in the same direction in the same lane of traffic and the following vehicle strikes the rear of the forward vehicle, in the absence of any other circumstances, reasonable minds could only conclude that the driver of the following car was guilty of failure to perform one or all of the duties placed upon drivers as above set out.

The other circumstances which the defendants feel change the negligence picture is that the driver of the forward vehicle came to a sudden stop without giving proper warning to the car following.

■ There is no probative evidence that the driver of the forward vehicle did not signal his intention to stop. All the driver of defendants' truck stated was that he did not see any signal given. The driver's statement therefore has no probative value under the facts of this case. Whether such evidence has probative value or not depends "upon the opportunities which the witness possessed for making observations. The testimony of a witness who gave negative testimony because he did not observe or was inattentive would amount to nothing. But if he was in a position where he could observe, and made diligent exercise of his faculties, his testimony that the alleged event did not occur is not negative but is, in fact, positive. Its value is dependent upon his credibility and a comparison of his opportunities for making observations with that of the other witnesses. Wigmore on Evidence (2d Ed.) § 664." *Lovett v. Gill,* 142 Or 534, 541, 20 P2d 1070.

There is no statement in the record from which an inference could be drawn that the defendant witness was giving any attention to any signals given or

that might be given by the driver of the forward car. His testimony is as follows:

"Well, we come to a school zone and there was children on the sidewalk, 15 or 20 feet from the curb, and I glanced to my left to see what was there, and as I looked back, why Mr. Woods had stopped pretty suddenly and I was—immediately I applied my brakes and just didn't have room to stop."

This defendant's own evidence shows that he was not looking at the automobile ahead when the brakes were first applied that would signal an intention to stop. A conclusion that no signal was given could only be based upon pure speculation, not on any substantial evidence. *Napier v. Southern Pacific Co.*, 218 Or 371, 345 P2d 400.

Assuming the driver of the forward car came to a sudden stop, this fact to avail the defendants would depend upon whether or not reasonable minds could conclude that, to do so under the circumstances, such action was negligent.

ORS 483.136 provides:

"(2) When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through the intersection or past such signal only with caution."

■ It is implicit in this statutory requirement that drivers stop at such signals when not to do so might endanger the safety of others. It therefore follows that drivers approaching such a signal are warned that motor vehicles ahead, upon reaching the intersection, may stop in the interests of safety.

The defendants cite evidence to the effect that Aylsworth, driver of the truck, estimated the children were

15 or 20 feet away, approaching the intersection, and it was his judgment that there was time for both vehicles to pass over the crosswalk into the intersection without endangering the safety of the children. Therefore defendants argue, since the children were 15 or 20 feet away from the intersection, reasonable minds might differ as to whether Woods should have stopped his automobile and if it was an unreasonable stop the jury could find that the unreasonable stop was the sole proximate cause of the collision.

The matter before us is essentially similar to that of *Miller v. Cody,* 41 Wash2d 775, 252 P2d 303, wherein the court said:

"Where two cars are traveling in the same direction, the primary duty of avoiding a collision rests with the following driver. In the absence of an emergency or unusual conditions, he is negligent if he runs into the car ahead. * * *

"In the instant case Cody was not confronted with any situation approaching an emergency. *As the driver of the following car, he was chargeable with knowing that the car ahead, which was edging out into the cross-traffic of an intersecting street, might come to an abrupt stop.* He nevertheless failed to observe this event when it did occur, or at least did not maintain such distance or have such control of his car that he could avoid the collision. Accepting at face value appellant's account of how the accident occurred, we are therefore of the view that the trial court did not err in holding appellant negligent as a matter of law." (Italics ours).

While the exact age of the children approaching the intersection does not appear in the record, the only reasonable inference that may be drawn is they were of elementary school age.

■ When children of tender age are to be seen at or

near a highway the law places the duty of using a high degree of care in the operation of motor vehicles.

> "* * * The law recognizes the fact that children are, depending upon their age, creatures of impulse, heedless of danger, and likely to imperil themselves without regard for consequences, and the recognition of this fact places upon the operator of a motor vehicle an extra burden of care and caution where children are involved. * * *
>
> "* * * Particularly where the driver of a motor vehicle knows of the presence of a child or children in, near, or adjacent to the street or highway, or should know that children may reasonably be expected to be in the vicinity, the driver is under a duty to exercise care, usually stated to be reasonable, ordinary, due, or proper care, for the safety of the child or children. In such situations, moreover, a high degree of vigilance is required of a driver to measure up to the standard of what the law requires as ordinary care. * * *" 5A Am Jur, § 436, p 506, quoted with approval in *Pope v. Heldman,* 215 Or 703, 710, 711, 336 P2d 63.

Where the law imposes, in the interest of safety, the duty of using a high degree of care upon a party in performing an act, it would be a strange rule of law that would permit another person involved in the situation to question the degree or extent of the judgment of the party charged with performance if at the time there were any circumstances present which would require the party charged with a duty to exercise his judgment.

■ In their second assignment of error the defendants complain that the trial court erred in refusing to strike the allegation in plaintiff's complaint as to speed and in considering speed in the granting of the directed verdict.

We fail to see the materiality of this assignment of error. The rate of speed was averred in the complaint

and there was sufficient evidence introduced that Aylsworth was driving at a speed in excess of what a reasonably prudent person would have driven under all of the circumstances then and there existing. Assuming that reasonable minds could disagree as to whether or not Aylsworth was negligent in this particular charge of negligence, this would then require a jury to pass upon that fact. Therefore the allegation should not have been stricken from the complaint.

■■ Whether or not the court instructed the jury to return a verdict for the plaintiff because he believed the defendant was violating the basic rule as a matter of law, we cannot say, but it is hornbook law that it is not necessary to a plaintiff's recovery that he establish each act of negligence alleged in his complaint; it is sufficient if any one act of negligence as alleged is proven as the proximate cause. In our opinion reasonable minds could reach no other conclusion but that Aylsworth failed to maintain a proper lookout and have his vehicle under proper control to avoid colliding with the Woods' car.

The defendants also assign error in the refusal to strike the evidence of the plaintiff to the effect that for several years he had been engaged as a partner in the falling, bucking and transporting of logs and had earned certain sums in each of those years. The purpose of the testimony was to form a basis for the jury to determine, as damages, the plaintiff's loss of future earning capacity, if any. The plaintiff testified he and his partner had been engaged in this logging operation until 1959, when because of his mother's health, he moved with his mother from Seaside to Portland. They sold two of their trucks but retained the balance of their logging equipment.

In May, 1958, plaintiff entered into the real estate

business and was so occupied at the time of his injury in January, 1959. His mother died in November, 1959. He stated it was his intention to re-enter the logging business but he was incapacitated to fully perform the duties he had previously discharged.

Defendants' objection is that this evidence, given and not stricken, is too speculative to form a basis for the jury to consider the earning capability of plaintiff after the injury as compared with his prior abilities.

■ A jury, having taken into consideration the nature and extent of a person's injuries, is entitled, if the evidence discloses injuries which will permanently affect the earning capacity of the injured person in the future, to consider and allow as general damages the loss, if any, to be anticipated. *Brown v. O.-W. R. & N. Co.*, 63 Or 396, 128 P 38. What an injured person has been able to earn in the past in the various occupations in which he has been engaged throws some light on his ability to earn in the future. *Shaw v. Pacific Supply Co.*, 166 Or 508, 113 P2d 627.

The defendants, however, contend that plaintiff's testimony with reference to his net returns from the partnership venture furnishes an improper guide for the consideration of the jury. They rely upon and quote the following from *Woschenko v. C. Schmidt & Sons*, 2 N. J. 269, 66 A2d 159:

"* * * But income or profits derived from a business requiring the investment of substantial capital or in which the injured person is engaged with others, or where he employs the labor of others cannot be accepted, as a measure of earning capacity. The measure of loss in such a case is the value of the plaintiff's services in the business. It is necessary to inquire into the character of the business also the capital and assets employed and proof of the loss of profits is properly admitted only

where they can be shown to be the direct result of the plaintiff's absence, in which case they are received not as a distinct element of damage, but as evidence of the value of the plaintiff's services. The value of his services is manifestly worth more than the mere cost of hiring another temporarily to fill his place. The thorough knowledge of the business thus acquired together with personal acquaintance with the customers has a value in the commercial world readily recognized by any business man. The evidence must be such as to directly point up the value of the plaintiff's services in the operation of the business in which case it is not conjectural. See Dempsey v. The City of Scranton, 264 Pa. 495, 107 A. 877; Cf. Offensend v. The Atlantic Refining Co., 322 Pa. 399, 185 A. 745, 17 C. J., § 195, p. 894. * * *"

An examination of the above case with reference to the matter quoted discloses that defendant is confusing the rule of loss of profits with impairment of the future capacity to earn. The quotation refers to loss of profits. See court's headnotes 8 and 9. Such is not the rule in this state. *Brown v. O.-W. R. & N. Co.,* supra; *Weinstein v. Wheeler,* 127 Or 406, 250 P 20, 271 P 733; *Shaw v. Pacific Supply Co.,* supra.

It appears from some of the cases that there are jurisdictions which seem to confuse loss of profits with future earning power, and therefore appear to apply the rule of reasonable certainty to general damages. However such is not the rule in this state.

Loss of earnings and profits must be pleaded and must be proven by evidence from which this loss may, within reasonable limits, be ascertained. Loss of future earning power on the other hand is the "natural consequence of a disabling injury" and therefore comes under the head of general damages.

What one has earned in the past is not the measure of damages by which the jury is to determine the injured person's future loss but is only evidence as to that person's prior ability to earn. The measure of damages to future earning power is to be determined by the jury taking into consideration the prior abilities of the individual and the extent to which the injuries affect those abilities, together with his age, health and general habits of industry. What has been earned by the exercise of those abilities is some evidence of what may be expected in the future.

■ Taking into consideration the uncertainty of all future events, there are no general rules by which such a loss can be determined with reasonable certainty; the extent of this future loss must to a large extent be left to the judgment of the trier of facts. It is true plaintiff testified he proposed to again actively engage in the logging business. Testimony as to a person's future intentions is too speculative to form a competent basis upon which to determine future earnings. *Weinstein v. Wheeler,* supra.

■ The evidence in this case, however, is such that a reasonable conclusion can be drawn that plaintiff had never entirely abandoned his logging business but had entered into the real estate business only as a temporary expediency because of his mother's condition of health and it might therefore be concluded this was not a new venture but a continuation of the prior one.

The trial court did not err in refusing to strike this testimony.

Finding no prejudicial error the judgment is affirmed.

McALLISTER, C. J., dissenting.

In my opinion the trial court erred in directing a verdict for the plaintiff. Whether defendants were

negligent and whether their negligence was a proximate cause of plaintiff's injuries, or whether plaintiff's driver was negligent and whether his negligence was the sole proximate cause of plaintiff's injuries, were questions which should have been submitted to the jury.

In cases involving rear-end collisions this court has held uniformly that the issues of negligence and proximate cause are for the jury. *Britton v. Jackson et al,* 226 Or 136, 359 P2d 429 (1961); *Boyle v. Cottrell et al,* 222 Or 565, 353 P2d 838 (1960); *Johnson v. L. A.-Seattle Mtr. Exp., Inc.,* 222 Or 377, 352 P2d 1091 (1960); *English v. Royce et al,* 220 Or 402, 349 P2d 660 (1960); *Rose v. Portland Traction Co.,* 219 Or 1, 341 P2d 125, 346 P2d 375 (1959); *Denton v. Arnstein,* 197 Or 28, 250 P2d 407 (1952). The only exception is *Dormaier v. Jesse,* 230 Or 194, 369 P2d 131 (1962), which contains a dictum to the effect that a defendant who drove into a blinding dust storm at approximately 45 miles per hour and collided with the rear of another vehicle was negligent as a matter of law.

Mr. Justice O'CONNELL joins in this dissent.