146 N.J. Super. 69 (1976)
368 A.2d 977
RUBIN GREENBERG, PLAINTIFF,
v.
GREAT AMERICAN INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 9, 1976.
*71 Mr. Joel I. Bergman for plaintiff (Messrs. Checki & Politan, attorneys).
Mr. John J. O'Donnell for defendant (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
MORRISON, J.C.C., Temporarily Assigned.
This is a declaratory judgment action arising out of a suit by plaintiff on a policy of insurance under the provisions of N.J.S.A. 39:6A-1 et seq., the New Jersey Automobile Reparation Reform Act. Plaintiff Greenberg had in effect at the time of his injury a policy of insurance with defendant Great American Insurance Company, which policy, upon the effective date of N.J.S.A. 39:6A-1 et seq., was endorsed to provide income continuation benefits as mandated by N.J.S.A. 39:6A-4(b). In addition, plaintiff purchased additional coverage for income continuation benefits under the provisions of N.J.S.A. 39:6A-10. The relevant factual contentions, stipulated solely for the purposes of this action, are as follows:
On March 23, 1973 plaintiff was struck by an automobile while a pedestrian crossing a street. Plaintiff is an "outside salesman" for various manufacturing concerns. His sales functions appear bifurcated, one aspect being the performance of "field work," i.e., personal solicitations and meetings with present and future clients, the other aspect being the performance of "at home duties," i.e., telephone solicitations, mailing of catalogues and mailing of correspondence. Plaintiff states that prior to the injury he dedicated five or six days a week working "in the field" and evenings working at home. After the accident the plaintiff's condition improved; his pre-injury ability to work was curtailed but not totally extinguished. The carrier paid the *72 policy benefits. However, plaintiff was eventually forced to undergo corrective surgery on June 12, 1974. Great American paid benefits at a 100% level until September 24, 1974. At that time it learned that plaintiff's income had in fact increased substantially over his income prior to the date of the accident, notwithstanding his injury, and it ceased paying any further benefits. Its justification was that plaintiff had no "lost income," as that term is used in its coverage pursuant to N.J.S.A. 39:6A-4(b).
Plaintiff claims that he is entitled to income continuation benefits under N.J.S.A. 39:6-4(b) as a result of his not being able to perform "field work" functions up to the level he performed them prior to the accident. He states that he has been impaired in that he can perform field work only up to 60% of his pre-injury capacity; put another way, he is only able to solicit personally three days a week.
The applicable statutory language reads:
b. Income continuation benefits. The payment of the loss of income of an income producer as a result of bodily injury disability, subject to a maximum weekly payment of $100.00 per week. Such sums shall be payable during the life of the injured person and shall be subject to an amount or limit of $5,200.00, on account of injury to any one person, in any one accident. [N.J.S.A. 39:6A-4(b)]
It is the interpretation of the first sentence of the above quotation that is the key to this case. Has plaintiff, a salesman working on commission, lost "income" as a result of diminished work ability (and the resultant diminishing of personal contacts which are necessary to generate those commissions) even though incoming dollar amounts are greater than those prior to his injury?
There is a dearth of case law on this question in New Jersey. Turning to the other "no fault" jurisdictions, we find the same to be true. Even if available, reliance on case law from other jurisdictions which may seem to be on point has its pitfalls. The apparently relevant cases must be carefully scrutinized in light of the statutory language *73 under which they are decided. Their value in our jurisdiction is extremely limited, given the nuances of the statutes encompassed under the generic heading of "no fault."
For example, Florida would, at first glance, seem to have cases which might shed light on the issue here presented. See Benton v. State Farm Mut. Auto Ins. Co., 295 So.2d 344 (Fla. App. 1974), and Griffin v. Travelers Indem. Co., 328 So.2d 207. (Fla. App. 1976).
However, the Florida statutory provision analogous to our "income continuation benefits" provision reads:
Disability benefits  One hundred percent of any loss of gross income and loss of earning capacity per individual, unless such benefits are deemed not includable in gross income for federal income tax purposes, in which event such benefits shall be limited to 85 percent, from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his household. All disability benefits payable under this provision shall be paid not less than every two weeks. [F.S.A., § 627.736(1) (b)]
No "earning capacity" language appears in our statute, therefore Florida cases are of no help on this issue.
A similar futility results if one attempts to seek assistance from our sister state, New York. New York's "no-fault" statute compensates a person for "basic economic loss." This includes:
(b) Loss of earnings from work which the injured would have performed had he not been injured, and reasonable and necessary expenses incurred by such person in obtaining services in lieu of those that he would have performed for income, up to one thousand dollars per month for not more than three years from the date of the accident causing the injury * * *. [N.Y. Insurance Law (McKinney 1966) § 671(1) (b); emphasis supplied]
No "work which the insured would have performed" language appears in the New Jersey statute and, therefore, New York cases are not applicable.
*74 We turn our attention back to New Jersey to seek out the statutory guidelines for resolution. There appear to be three mandatory elements for recovery of income continuation benefits in New Jersey: (1) Loss of income, (2) by an income producer, (3) resulting from bodily injury disability.
Dealing with the most obvious, element (2) is met by plaintiff. Using the N.J.S.A. 39:6A-2 definition of "income producer," there is no question that at the time of the accident plaintiff's "occupational status" was that of salesman and he was "earning and producing income." His Internal Revenue Forms (1040) for the injury period are the best indication of this.
As to element (1), loss of income, "income" is defined in N.J.S.A. 39:6A-2 as "salary, wages, tips, commissions, fees and other earnings derived from work or employment." While it is possible to argue, as plaintiff does, that there was a loss of commissions due to plaintiff's inability to personally call on purchasers, a strong inference to rebut the contention can be drawn from the facts developed by defendant under N.J.S.A. 39:6A-13, "Discovery of facts as to personal injury protection coverage."
Under that provision employers must furnish insurers with statements of lost earnings from the date of the injury to the present, and with statements of past income for a reasonable period. It would appear that these figures are facts upon which the insurer makes mathematical calculations to determine if there are actual losses in earnings. Thus, the policy behind the statute seems to be the reimbursement of income based upon prior earnings up to the $100 maximum weekly payment set by N.J.S.A. 39:6A-4(b). The calculations hinge on dollar figures which represent actual past earnings and not earning capacity. This results in a just disposition when, as here, actual earnings increased in spite of an accident, and earning capacity was damaged in one aspect of a salesman's function (field work) but not in the other (at home solicitation, etc.).
*75 This leads us to the final consideration of whether plaintiff's loss of income resulted from "bodily injury disability," element (3). Looking at the income accretion of plaintiff during the injury period, one is faced with an interesting question: Was this injury a "disability" in terms of income production?
There is no question that plaintiff was disabled in the sense of not having his complete physical powers of mobility. Given the apparent increase in income, it would appear that this injury was not disabling in terms of plaintiff's earning ability. To understand what appears to be a paradox (how someone who is injured could actually increase his income), one must re-examine the bifurcated nature of plaintiff's job function previously discussed.
If we could place the separate elements of plaintiff's employment, i.e., field work vs. at home work, on a simple balance scale, then as the field work ability on one side of the scale decreases (due to decreased physical mobility); proportionately "at home" work ability increases (due to plaintiff's inability to be on the road). Viewing the employment in this context, the injury proved not to be "disabling." Given the increase in "at home" ability, plaintiff was able to maintain and increase his income throughout. Thus, plaintiff would not qualify under element (3) due to his not having a "bodily injury disability" which resulted in a loss of income.
This court finds that plaintiff has failed to meet two of the three requirements for recovery under N.J.S.A. 39:6A-4.[1] Thus, he has suffered no compensable loss under that provision and the Court will enter judgment accordingly for defendant.
NOTES
[1] It should be noted that this decision hinges on the special factual situation presented herein. It is foreseeable that in the near future a court will be squarely confronted by the issue of an income producer's right to compensation for diminished work capacity. It is hoped that the Legislature will provide some needed assistance on that question.