155 N.J. Super. 16 (1977)
382 A.2d 85
DOLORES L. HUNTER, PLAINTIFF,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, A CORPORATION DOING BUSINESS IN NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 8, 1977.
*18 Mr. Richard D. Schibell for plaintiff (Messrs. Shebell and Schibell, attorneys).
Mr. Harry V. Osborne II, for defendant (Messrs. Evans, Koelzer, Marriott & Osborne, attorneys).
MCGANN, J.S.C.
Plaintiff was injured in an automobile accident on October 4, 1976. At that time she had a policy in effect with defendant Hartford Accident and Indemnity Company which provided her with "first party" personal injury protection benefits in accordance with N.J.S.A. 39:6A-4. She made claim against the carrier for income continuation benefits and the payment of medical expenses she incurred. Payment was refused. This action ensued.
Plaintiff moves for partial summary judgment in her favor on the liability aspect of both medical expense benefits and income continuation benefits. Defendant moves for partial summary judgment in its favor on the income continuation benefit issue. Based on depositions taken and the affidavit submitted by plaintiff, as well as memoranda supplied by counsel, I find that there is no conflict as to the material facts; the matter is ripe for partial summary judgment. R. 4:46-2.
Defendant does not factually or legally contest plaintiff's right to medical expense benefits. Accordingly, partial summary judgment is entered in her favor and against defendant on that issue, leaving for subsequent resolution, if necessary, the amount of the reasonable medical expenses which she incurred as the result of the accident of October 4, 1976.
As to the income continuation benefits issue I find the following facts:
Plaintiff had been employed by R. Hunter and Brother (no relation). That company prepares master copies of sheet music from which sheet music publishers and book publishers reproduce and print the finished sale copies. Plaintiff first worked for that company about 10 to 12 years ago for a period of 2 to 3 years when it was located in North Jersey. *19 She was employed by them at various times since and, basically, at her choosing. Her tasks were many including "note-stamping," typing, wrapping and other incidental jobs. When employed, she worked full-time.
The Hunter concern moved to the Freehold area from North Jersey in 1976 and at that time plaintiff again came into its employ. She worked regularly and steadily through April 30, 1976. She stopped work after that day in order to undergo an operation which took place on May 13, 1976. She received no salary after April 30, 1976 but did collect disability benefits from some time after the operation.
The Hunter concern wanted her to come back to work as soon as she was able. However, her convalescence took an extended time so that when she finally called in and stated that she was available for work business was slow and she was not immediately rehired.
October 4, 1976 was a Monday. On the previous Thursday or Friday Robert Hunter had called and left word with plaintiff's mother that work was then available and asked that she return. From the employer's standpoint it was not critical that she begin work on October 4 but unquestionably there was work for her to do and if she had reported to work on that day she would have been placed immediately on the payroll. Because of the type of work involved it was not necessary that an employee report at a specified hour. Employees were paid on an hourly basis.
Plaintiff actually intended to go to work on October 4. She did not call Hunter to confirm that fact but a call was not necessary nor did he expect one. The accident causing the injuries occurred on the morning of October 4.
Defendant argues its nonliability for income continuation benefits from the language of the statute which mandates "payment of the loss of income of an income producer." N.J.S.A. 39:6A-4(b). N.J.S.A. 39:6A-2(d) defines "income producer" as follows: *20 "Income producer" means a person, who at the time of the accident causing personal injury or death, was in an occupational status, earning or producing income.
Income, according to the statute N.J.S.A. 39:6A-2(c) is:
* * * salary, wages, tips, commissions, fees and other earnings derived from work or employment.
The phrase "income producer" has received judicial attention. Rybeck v. Rybeck, 141 N.J. Super. 481 (Law Div. 1976), upheld the constitutionality of the Automobile Reparation Reform Act (N.J.S.A. 39:6A-1 et seq.) as a whole. A specific constitutional attack was mounted therein against the income continuation benefits section on the ground of invidious discrimination against nonwageearners. The court, expressly declined to rule on the question but by way of dictum said the following:
Section 4(b) of the act provides income continuation benefits for loss of income to an injured "income producer." Section 1(d) defines "income producer" as a person who, at the time of the accident, was in an occupational status, earning or producing income. Income continuation benefits are, therefore, available only to persons currently employed. They are withheld from the temporarily laid-off worker who is called back but unable to return to work because of his injury, from the about-to-be-employed, and, perhaps, from the sporadically employed. If the worker is not entitled to PIP income benefits and has no civil suit because he falls short of the medical threshold, he has no income replacement from any source. This is troublesome. Section 4(b) may focus on too narrow a slice of the worker's life, that is, the moment of injury, thus creating an artificial and invalid class. This is not the problem of plaintiffs here, however, and the provision is severable. For that reason it seems preferable to await a real situation to which the exclusion applies for a ruling on its validity. Such a ruling is unnecessary to a determination of the present motion. [at 499]
If an accurate statement of the law, the dictum would preclude plaintiff's recovery in this case.
In Richburg v. Selected Risks Ins. Co., 147 N.J. Super. 401 (Law Div. 1977), the court was confronted with the issue of the meaning of "income producer." There the plaintiff employee had been temporarily laid off on December 29, *21 1974 because of weather conditions. He collected unemployment compensation benefits. While still unemployed he was injured in an automobile accident on February 3, 1975. On February 28, 1975 he received a letter from his employer calling him back to work. His injuries prevented his return.
Summary judgment was entered in favor of the carrier on plaintiff's claim for income continuation benefits. The court stated its reasons as follows:
Upon being laid off plaintiff ceased to be in an occupational status, earning or producing income. Manzo had no obligation to continue or resume plaintiff in its employ. Neither plaintiff's expectation that he would be rehired at some uncertain future date, nor Manzo's request after plaintiff's accident that he report to work, is sufficient to permit a finding that plaintiff was in an occupational status, earning or producing income, at the time of the accident. The intentions or plans of plaintiff and Manzo notwithstanding, at the critical time plaintiff was unemployed, and therefore not entitled to income continuation benefits. See Rybeck v. Rybeck, 141 N.J. Super. 481, 500 (Law Div. 1976).
A very close application of the principle enunciated in that case would deny plaintiff relief for, indeed, "at the critical time plaintiff was unemployed."
In Mazza v. Insurance Co. of North America, 149 N.J. Super. 60 (Law. Div. 1977), plaintiff, at the time of the accident, had been temporarily laid off, was collecting unemployment benefits and had been scheduled to resume work two days after the accident. Defendant argued that Mazza was not an "income producer" on the date of the accident. The court held otherwise and stated:
N.J.S.A. 39:6A-2(d) defines an "income producer" as "a person who, at the time of the accident * * * was in an occupational status, earning or producing income." Decedent enjoyed this status at the time of the accident. True, he was not physically employed, but he was in an occupational status, and his unemployment insurance benefits were a statutory replacement of his work income and constituted "income" within the meaning of the statutory definition. [at 63]
That holding tends to favor plaintiff's position here.
*22 In order to be an "income producer" for the purpose of the Automobile Reparation Reform Act must one have been actually on the payroll or earning income on the day of the accident? The answer to that clearly seems to be "No." The definition of "income" points to that conclusion. Income is not limited to salary (of a payroll employee) but includes wages (as a day worker might earn), tips, commissions (as a real estate salesman depends on), fees "and other earnings derived from work or employment." The language is broad and intentionally so. The Legislature could have been more precise had it wished. Equally broad is the definition of "income producer" as "a person, who at the time of the accident * * * was in an occupational status, earning or producing income." The day-worker, for example, who is injured in an automobile accident on a day when there is no work for her, is covered. So is a real estate salesman although there may be weeks or months between the actual receipt of commissions by him.
"Occupational status" seems to mean that held by a person who is part of the laboring force, who wants to work and is available for work, even though not actually working at the precise moment or day of the accident. The term connotes a class consisting of those who actually produce "income" or, in a realistic way, have the potential to do so. Excluded are the retired, the unemployable and those who have never been a part of the work force. In my view, included in the term would be those persons collecting unemployment benefits. Such benefits are specifically made deductible from any payments required under income continuation benefits. N.J.S.A. 39:6A-6.
In Iavicoli, No Fault & Comparative Negligence in New Jersey, § 17 at 52 (cited in Mazza, supra) the author states:
Status has been defined as a person's condition arising out of legal station. Occupational status is no more than the condition of an individual's right or relationship to gainful employment. The Act (The Automobile Reform Reparation Act) does not require that the injured individual be actually in the course of employment when *23 the injury occurs. Such a construction would extend coverage only for a 40 hour work week which is not the intent of the Act's income continuation benefit provisions.
A person who is on strike or laid off and who is to return to work at some date after the accident, should be considered as much in an occupational status earning or producing income, as is an individual on vacation or a person who is off from work from the end of one work day until the morning of the next work day.
Here plaintiff had not been laid off. She had taken a voluntary leave of absence, agreeable to her employer, with the understanding that her job was awaiting her when she was ready to come back to work. On the date of the accident the job was available, the employer wanted her; she intended to return. The accident prevented her from earning the income she unquestionably would have. She was in an "occupational status"; she was an "income producer".
Partial summary judgment in favor of plaintiff on the issue of defendant's liability to pay income continuation benefits is granted. Defendant's cross-motion is denied.