LINDA C. SIKKING, EXECUTRIX OF THE ESTATE OF HERMAN J. SIKKING, PLAINTIFF, v. SELECTED RISKS INSURANCE COMPANY, DEFENDANT.

Superior Court of New Jersey
Law Division Cumberland County

Decided October 18, 1985.

*Darrell M. Fineman* for plaintiff (*Capizola, Fineman & Kutner*, attorneys).

*John P. Morris* for defendant (*Horuvitz, Perlow, Morris & Baker*, attorneys).

## OPINION

KLEINER, J.S.C.

The novel question posed in this declaratory judgment suit is whether the interpretation of legislative intent of the PIP statute, *N.J.S.A.* 39:6A–2(d) and 39:6A–4(b), as set forth in *Gambino v. Royal Globe Ins. Co.*, 86 *N.J.* 100 (1981), is applicable to the factual issues raised at trial.

In particular, the Court must determine whether the decedent, Herman Sikking, was an "income producer," as defined by *N.J.S.A.* 39:6A–2(d), at the time of his death on June 13, 1982.

Herman Sikking was employed with Owens-Illinois Kimble Division as a glassworker from October 18, 1965 until April 26, 1982. Sikking had an excellent employment record during this period. Several months prior to his death, Sikking expressed dissatisfaction with his employment due to the shift work which he had been given and accompanying new job responsibilities. Sikking, on several occasions, approached his supervisors and

informed them that he was thinking of leaving his employment due to his continuing dissatisfaction. After taking some time off to assess his present employment status, Sikking decided on April 26, 1982 to leave Kimble. At the time, Sikking was 49 years of age, was married and resided with his wife and two children.

On June 13, 1982, approximately six weeks later, Sikking died from injuries sustained in a one-vehicle automobile accident. At the time of his death, Sikking was the named insured on a policy of automobile insurance issued by defendant, Selected Risks Insurance Company, (Selected Risks). Following Sikking's death, Selected Risks paid, pursuant to the no fault (PIP) provisions of the policy, funeral expense, death and essential service benefits. Selected Risks refused, however, to pay "survivor benefits" under the policy, contending that the decedent was not an "income producer" at the time of the accident.[1] Linda Sikking, as Executrix of the estate of Herman Sikking, subsequently filed this declaratory judgment suit, asserting entitlement to these PIP benefits.

In order to recover income continuation benefits under the New Jersey No-Fault Insurance Act, it is necessary that the decedent have been an "income producer" at the time of his death. *Greenberg v. Great American Insurance Co.*, 146 *N.J.Super.* 69 (Law Div.1976), *rev'd* on other grounds, 158 *N.J.Super.* 223 (App.Div.1978).

The term "income producer," as contained in both the insurance policy of the decedent and the statutory framework of the no-fault insurance law, is defined as a person who, at the time of the accident causing personal injury or death, was in an occupational status, earning or producing income. *N.J.S.A.* 39:6A–2(d). In order to fit within this definitional framework, it

---

[1]Under the terms of the policy, in the event of death, "survivor benefits" replace income continuation benefits which are payable to a disabled income producer. *N.J.S.A.* 39:6A–2(c) and *N.J.S.A.* 39:6A–4(b) and (d).

is not necessary that one have been actually on the payroll or earning income on the date of the accident. *Hunter v. Hartford Acc. & Indem. Co.*, 155 *N.J.Super.* 16 (Law Div.1977). Under the law as currently pronounced by the New Jersey Supreme Court, certain other categories of individuals are considered "income producers" under the current no fault provisions.

These include:

1. Employed persons injured over a non-working weekend;

2. Employed persons injured on an authorized, unpaid sick or vacation day or;

3. Employed persons injured on a leave of absence without a real permanent break in employment. *Gambino, Id.*, 86 *N.J.* at 109.

The *Gambino* court further stated that the concept of "income producer" would include individuals who have affirmatively made *actual* arrangements to ensure that they will be employed for remuneration at some time in the near future. *Id.* at 110; emphasis supplied.

In *Gambino*, the plaintiff was injured while on a temporary leave from employment. At the time, plaintiff had already secured new employment and had a firm commitment at a stated salary. The accident took place just two days before he was to begin his new job. The *Gambino* court, in interpreting the no fault insurance law to give full effect to the legislative intent, stated:

Consistent with the essential purpose of the Act, we believe that the phrase "occupational status, earning or producing income" was meant to be considered as a linquistic and conceptual whole—a singular or holistic requirement that must be met by a claimant in order to be classified as an "income producer." Rather than myopically focusing upon isolated segments of a person's existence or the details of an artificial and unnaturally narrow "slice of life" in order to determine if that person has, on a particular day, produced income, the status or position of the individual must be viewed with a wide-angle lens that looks at the entire life role as it would be perceived by a person familiar with the individual's pattern of living "as of the date of the accident." *Cf. Rybeck v.*

*Rybeck,* 141 *N.J.Super.* 481, 500 (Law Div.1976), app. dism. 150 *N.J.Super.* 151 (App.Div.1977).

The court then found that the application of the above stated principle mandated the conclusion that the plaintiff, although technically unemployed at the time of the accident, was an "income producer" as defined in *N.J.S.A.* 39:6A–2(d), and was therefore entitled to income continuation benefits under PIP.

The facts in the case before this Court are distinguishable from those in *Gambino.* The Court finds this distinction fatal to plaintiff's claim of entitlement under the defendant's insurance policy.

It is clear from the testimony adduced at trial that the decedent had no firm commitment for future employment between the time he left Kimble and the time of his death. Testimony did reveal that the decedent had expressed an intent to obtain similar employment in the glass industry to his wife, his brother and co-workers. There is simply no evidence, however, that the decedent actually pursued any employment search during the six week interim preceding his death, cf. *Gambino v. Royal Globe, supra.*

Plaintiff contends that decedent's untimely death should not ban recovery where he had been gainfully employed for the past 20 years and had demonstrated an intent to be so employed in the future. Plaintiff seeks a liberal reading of *Gambino,* which would permit recovery where an individual, although not committed to future employment, is nevertheless readily employable and in all likelihood, would have sought and procured such employment.

The Court will not speculate on what might have been. It will decide this issue upon the facts as they are. Herman Sikking was not employed at the time of his death, nor was he actively seeking employment. He, unlike the plaintiff in *Gambino,* had no "firm commitment to commence employment in the future." *Gambino,* at 111.

■ The fact that Sikking's long-term intent may have been to continue employment in the glass industry or in another occupation does not dissuade this Court from concluding that he was not an "income producer" as defined in *N.J.S.A.* 39:6A–2(d) and *N.J.S.A.* 39:6A–4(b) at the time of his death. Therefore, the plaintiff is not entitled to "survivor benefits" under the insurance policy issued by defendant, Selected Risks.

The plaintiff additionally argued an alternative theory of recovery. The facts of this case established that the decedent and his wife resided in a home owned by the decedent's three brothers. The decedent and his brothers had an unwritten understanding that if the decedent maintained and repaired the property, he could live in the property rent free. Based upon this arrangement—free rent in exchange for unspecified maintenance—plaintiff contends that fair rental value of the property constitutes compensation and therefore the decedent was an income producer and was in an occupational status.

Income is defined within the defendant's insurance policy as "salary, wages, tips, commissions, fees and other earnings derived from work or employment."

This definition must be read in conjunction with the policy definition of "income producer," i.e. "a person who, at the time of the accident, was in an occupational status, earning or producing income."

Although there may be occasions where the fair rental value of a residence might be considered income, for example, the value of an apartment provided to an apartment house manager, in lieu of actual compensation. Such an example, however, connotes regular duties and responsibilities with a concomitant requirement of the payment of federal and state income taxes.

■ Sikking had no regular required duties; whether to repair or not repair was his decision. How repairs were done or when was solely the decedent's decision. There was no evidence presented that any of his three brothers ever super-

vised repairs to set the standards for the same. There was no proof that the decedent reported "fair rental value" as income for tax purposes.

For the above reason, this informal family arrangement does not qualify Sikking as a recipient of income nor as being in an occupational status.

Judgment is hereby entered for the defendant.